UNITED   STATES   DISTRICT   COURT
FOR THE DISTRICT  OF  MASSACHUSETTS

```
------------------------------------ )
In The Matter Of The Application Of; )
FRANK IGWEBUIKE ENWONWU              )
          Petitioner, Pro Se,        )        CIVIL ACTION FILE
                                     )
v.                                   )
                                     )
MICHAEL CHERTOFF, Seccretary Of      )
Department Of Homeland Security,     )
                                     )
BRUCE CHARDBOURNE, Interim Field     )
Officer Director For Detention and   )        PETITION FOR A WRIT
Removal, Bodton Field Office, Bureau )        OF HABEAS CORPUS
of Immigration and Customs           )
Enforcement, DEPARTMENT OF           )
HOMELAND SECURITY, Thomas HODGESON,  )
Sheriff, Bristol County House        )
Of Correction                       )
                                     )
                                     )
          Respondents.               )
------------------------------------ )
```

05-11663 WGY

## PETITION FOR A WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C & 2241

NOW COMES Frank Igwebuike Enwonwu (hereinafter "Mr ENWONWU or "PETITIONER"),hereby petitions this Court for a Writ of Habeas Corpus to remedy his unlawful detention, without any provision for release on BOND or any form of conditional release, pending the resolution of his case currently pending in the United States Court of Appeals (First Circuit).

In support of this petition and complaint for unreasonable excessive detention, Mr ENWONWU alleges as follows:

1

**STATEMENT OF THE FACTS**

On January 20, 1986, Mr. Enwonwu arrived at Logan International Airport in Boston, Massachusetts with a tourist visa. He was interrogated and ultimately searched by a customs officer, and was found to be, *inter alia*, in possession of five ounces of heroin. [Exhibit 1]. An agent from the Drug Enforcement Administration (hereinafter "DEA") by the name of Herbert Lemon (hereinafter "Special Agent Lemon") was summoned to arrest and book Mr. Enwonwu. The Petitioner was then arraigned before the U.S. District Court for the District of Massachusetts and charged with various counts, to wit: importing or attempting to import heroin, in violation of 21 U.S.C. §§ 952, 960 and 963, and possession of Heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). [Exhibit 2]. His Nigerian passport was impounded and has been permanently held since the date of arrest. [Exhibit 3].

In the course of investigating the case, Special Agent Lemon promised Mr. Enwonwu that he would be granted asylum in the United States if he cooperated by assisting government agencies in the apprehension and successful prosecution of other persons involved in the drug trafficking ring. The DEA convinced the United States Attorney's Office in Boston (hereinafter "USAO") to consent to Mr. Enwonwu's admission into a pretrial release program in order to continue the ongoing investigation. On or about February 5, 1986, Magistrate Judge Joyce Alexander entered an order at the request of the USAO allowing for Mr. Enwonwu's pretrial relief. [Exhibit 4]. Thereafter, Petitioner not only aided in the apprehension of his New York contacts, but also facilitated the arrest of one of the top members of the drug smuggling group in Ohio.

Ultimately, Mr. Enwonwu assisted with the successful arrest and prosecution of three fellow Nigerian nationals.

On or about March 21, 1986, as part of a plea agreement with the USAO, Mr. Enwonwu pled guilty to the charge of importing heroine in exchange for the dismissal of the other charge (possession with intent to distribute). [Exhibit 5]. He was given a five-year suspended sentence, and placed on probation for a period of three years, with special parole term of three (3) years. [Exhibit 6]. One of the conditions of probation was that he "*must not serve as an informer [sic] while on probation and [he] must promptly and truthfully answer all inquiry directed to [him] by the probation officer.*"

Special Agent Lemon then was instrumental in convincing the INS (now DHS) to extend Mr. Enwonwu's stay in the United States and provide him with an EAD. [Exhibit 7]. Special Agent Lemon then helped Mr. Enwonwu get a job as a taxi driver in the City of Boston. He did so by contacting Captain Devine of the Boston Police Hackney department and requesting a waiver of Mr. Enwonwu's criminal conviction so that the latter could obtain a hackney license -- a job prerequisite.

Nevertheless, both Special Agent Lemon and subsequently the DHS equally retained Petitioner as an informant and assigned him another agent for weekly reporting. Both the DEA and the DHS paid Petitioner on a periodic basis. This practice continued until Mr. Enwonwu's Probation Officer delved into his income sources and became aware that Petitioner was serving as an informant for both agencies. Petitioner was reminded in very firm language of the consequences of working as an informant on the terms of his probation and instructed him to inform both the DEA and the DHS agents that he could no longer continue to function in that capacity during his probation. Petitioner complied

3.

and was then able to successfully complete his probation in April, 1991.

On or about April 1, 1997, the DHS began to implement IIRIRA's amendment of §241 of the Immigration and Nationality Act (hereinafter "INA") which now retroactively reclassified all past drug-related cases as "aggravated felonies". Consequently, despite having remained trouble-free and working for 10 years, Petitioner was arrested and placed in removal proceedings before the EOIR.[4]  Initially, the DHS contended that Petitioner was never admitted into the United States, and as such was an "arriving alien". The DHS altered its stance upon learning that the Petitioner was indeed "paroled" in and authorized to work. [Exhibit 8]. Petitioner still faced removal though because of his prior conviction.

Immigration Judge Leonard Shapiro (hereinafter "Judge Shapiro") presided over the removal hearings. He allowed the parties some time to explore the possibility of the DEA and the DHS affording Petitioner an "S" visa.[5]  [Exhibit 9, pp. 9-24]. The negotiations failed because Petitioner could not give the DEA an immediate proffer of pending drug activity. Thereafter, after a summary hearing on August 28, 1997, Judge Shapiro sustained the claims in the charging documents and ordered that Mr. Enwonwu be removed back to Nigeria. [Exhibit 10].

---

[4] After IIRIRA, both "deportation" and "exclusion" proceedings were deliberately folded into "removal" proceedings. This new term was more than a mere sugarcoating of legal terminology. "Removal" denied various forms of relief in what were known as deportation proceedings while prohibiting "exclusion" hearings outright.

[5] An "S" visa is available to an individual in possession of critical reliable information concerning a criminal organization or enterprise who is willing to supply or has supplied information to federal or state law enforcement authorities or court and whose presence in the United States the Attorney General determines is essential to the success of an authorized criminal investigation.  INA §101(a)(15)(S); 8 U.S.C. §1101(a)(15)(S).  The DHS may also parole a person into the United States where state or federal law enforcement agency is prepared to apply for an "S" visa.  8 C.F.R. §§212.14, 1214.14.

Mr. Enwonwu immediately appealed his removal to the BIA [Exhibit 11]. It was denied on June 10, 1998. [Exhibit 12]. He was thereafter transferred by the DHS to the Krome Detention Center (hereinafter "Krome") in Florida while awaiting deportation. While at the Krome, he filed a Petition No. 5:98cv210/RH-2/MD, seeking a Writ of Habeas Corpus from the United District Court for the Northern District of Florida. The petition was denied upon the Attorney General's contention that the U.S. District Court lacked jurisdiction to entertain a Habeas Corpus proceeding regarding an immigration matter. [Exhibit 13].[6]

Subsequently, Petitioner's case was reopened and remanded to the Immigration Court in order to afford Petitioner the opportunity to pursue relief under the Convention Against Torture provision (hereinafter "CAT").[7] The Record of Proceedings (hereinafter "ROP") -- currently unavailable to Petitioner despite his various applications dating back almost six months -- will show that Petitioner called evidence to show that deporting him to Nigeria would result in his arrest and imprisonment in that country for a term of five (5) years pursuant to the Nigerian National Drug Law Enforcement Agency (Amendment) Decree 1990, Decree No. 33 (October 10, 1990) (hereinafter "Decree No. 33"). Petitioner would be detained at the Kiri Kiri maximum security prison in Nigeria and be

---

[6] Mr. Enwonwu's plight had even been documented in a February 14, 1999 Boston Globe article entitled "As INS jails fill, a release plan surfaces". [Exhibit 14].

[7] Under Art. 3 §1 of the CAT, no signatory country "shall expel, return ... or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Under Art. 3 §2 of the CAT, the BIA must "take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights." The CAT is a treaty but still a law of the Unites States, specifically mentioned in section 2241. Builes v. Nye, 239 F.Supp. 2d 518, at fn. 5 (M.D. Pa., 2003).

exposed to serious bodily harm or even death at the hands of the very same persons who the USAO prosecuted as part of his cooperation with the DEA. Additionally, evidence was introduced to establish the fact that the drug lords who remained very influential in Nigeria could easily recruit guards or other inmates to harm, torture and kill the Petitioner once he was housed inside the Kiri Kiri maximum security prison.[8]

On or about December 19, 1999, Judge Shapiro heard the case once again -- this time on the merits. Special Agent Lemon testified at this trial (under subpoena order) about Mr. Enwonwu's substantial cooperation with the DEA. After a full-fledged hearing, Judge Shapiro found said evidence and other factual information credible enough to entitle Mr. Enwonwu to deferral of removal under CAT. [Exhibit 15]. Petitioner was thereafter released and issued another EAD by the DHS.

The DHS reserved the right to appeal Judge Shapiro's ruling. In the meantime, Mr. Enwonwu was required to provide the EOIR with his contact address, which he gave as "c/o of Rose O. Mgbojikwe, 39 Sheridan Drive, Apartment # 8, Shrewsbury, Massachusetts 01545."[9] At some point in 2000, Ms. Mgbojikwe, purchased a condominium at 27 Lebeaux Drive, Shrewsbury, Massachusetts 01545, and both she and Mr. Enwonwu moved to the new address. Ms. Mgbojikwe informed the U.S. Mail of this change of address. Mr. Enwonwu did his part and *personally* informed the DHS of his current address at *all* times, since he had to do so every time he visited the local BCIS

---

[8] Again, such evidence appears in the ROP, which is currently unavailable to the Petitioner.

[9] Rose O. Mgbojikwe is one of Mr. Enwonwu's sisters. She has provided him shelter during the intervals of freedom he previously enjoyed.

office[10] to annually renew his EAD.

Mr. Enwonwu had sought clarification from his counsel at the time -- Anthony Pelino -- of what the DHS meant by reserving the right to appeal. Mr. Enwonwu wanted to know this especially because Attorney Pelino was moving his practice to the State of Arizona and would no longer remain in the Commonwealth of Massachusetts.[11] Attorney Pelino responded by stating that usually the DHS did not appeal rulings of the Immigration Court; however, they had reserved the right to file their notice of appeal within 30 days. With the foregoing in mind, Petitioner counted the seconds until after January 18, 2000, the date that Judge Shapiro had indicated that said Notice of Appeal was due. By the end of January 2000, when Petitioner did not hear from either the DHS or his counsel, he concluded that the DHS was no longer intent on pursuing the matter.

Petitioner began taking steps to regain control of his life. By mid-2003, he had earned his realtor's license. [Exhibit 16]. His outstanding performance earned him recognition as employee of the month at his ReMax office at 398 Pleasant Street, Malden Mass, for Feb. 2004. [Exhibit 17].

Petitioner soon recognized that sale of real property was seasonal. To make ends meet, he needed another job, at the very least, a part time job. As such, on September 13, 2004, Petitioner once again visited Room E-160 to renew his work authorization as he

---

[10] The BCIS office is located at Room E-160 of the John F. Kennedy Building in Boston, Massachusetts).

[11] Attorney Pelino's office is presently located at 680 South Park Street, P.O. Box 1909, Florence, Arizona 85232-1909. He has been in Arizona for a number of years. Petitioner's new attorney has already attempted to contact him via certified mail for a copy of the file.

had done in preceding years. Once more, he was arrested and detained.

Petitioner sought to know why he was being arrested, and was informed that the
DHS had successfully appealed the Order of deferral of removal entered by Judge Shapiro
on December 16, 1999, pursuant to the CAT. Unbeknownst to Mr. Enwonwu, the BIA
had ruled on the DHS appeal back on May 30, 2003 and determined that he had failed to
establish his *prima facie* eligibility for CAT. In sum, the BIA had sustained the
government's appeal, vacated Judge Shapiro's order, and ordered Petitioner removed
from the United States. [Exhibit 18].

Some of Petitioner's other siblings (Leopold O. Enwonwu and Adeline Amazu)
frantically called Attorney Pelino, who in turn confirmed to them that he had no
knowledge whatsoever that the DHS had pursued the appeal, since he had already moved
his practice from Massachusetts to Arizona. Thereafter, Petitioner hired new counsel
(Joyce & Zerola, P.C.) to file a motion to reopen the appeal pursuant to 8 C.F.R.
§1003.23(b)(4)(iii)(A), and for a very brief stay of deportation under 8 C.F.R. §1003;
[Exhibit 19].

It does appear from the brief filed by Mr. Enwonwu's attorneys on October 8,
2004,[12] that the DHS had indeed filed a timely Form EOIR-26 (Notice of Appeal) to the
BIA about December 30, 1999. Although the file showed that service had been made to
Attorney Pelino, Petitioner was not served personally, and no copy of the notice of appeal
was mailed to him. Furthermore, subsequent pleadings sought to be served on Petitioner
did not get to him as they were returned because they had been wrongly addressed, and

---

[12] Mr. Enwonwu's attorneys were only permitted to review the ROP of the DHS appeal.

did not indicate that Petioner's address was "c/o Rose O
Mgbojikwe." Ms Mgbojikwe is Petitioner's sister with whom he
was residing. As such, the notice of appeal was never
delivered to Petitioner but instead returned to the BIA and
marked " [u]nknown at the above address

Later in 2000, after the INS filed its notice of appeal,
Petitioner moved with his sister to a new address in Shrew-
sbury, Massachusetts (27 Lebeaux Drive. Ms Mgbojikwe filed
a change of address form with the United States Postal Service
Petitioner believed that he provided sufficient notice to the
INS of his address change when he renewed his Employment
Authorization Document at the Bureau of Citizenship and
Immigration Services as he was annually required to do.
Believing that his immigration problems had been resolved,
Petitioner began taking steps to regain control of his life.

By 2003 Petitioner had earned his realtor's licence and was
subsequently hired by Remax Realtors in Malden, Massachusetts.
By the autumn of 2004, however, Petitioner realized that the
sale of real estate was seasonal and decided to seek an
additional job. To that end, on September 13, 2004, Petitioner
visited the Bureau of Customs and Immigration Services Office
in Boston to seek the necessary employment authorization.
Upon identifying himself, Petitioner was again arrested and
detained. When Petioner asked why he was being arrested, he
was informed that the INS, now the Depatment Of Homeland
Security, had successfully appealed Hearing Officer   Shapiro's
1999 derrerral of removal order.

Indeed, on May 30, the BIA true to their pattern of injustice issued a decision vacating the hearing officer's decision and ordering Petitioner's removal from the United States after four years of a pending appeal by the INS.

According to the BIA:

The Immigration Judge granted [CAT] relief based on the fact that the respondent, under Nigerian Law, will likely be subject to arrest, detention and prosecution on account of his drug conviction in the United States. We have previously held that a Nigerian convicted of a drug offense in the United States failed to establish eligibility for deferal of removal because the evidence she presented regarding theenforcement of decree No. 33 of the Nigerian Drug Law Enforcement Agency could not meetthe burden of proof for [CAT]. See Matter of M-B-A-,23 I&N Dec. 474 (BIA 2002). We therefore conclude that the mere possibility of arrest and prosecution in Nigeria does not establish that the respondent in this instance would more likely than notbe subject to torture by a public official or with the acquescence of such an official. See 8 C.F.R. $$ 1208 . 16(c) (4), 1208. 18 (a) (7).

The BIA apparently ignored the hearing officer's additional conclusion that even if Petitioner was not subject to arrest and prosecution under the Nigerian Law based on his United States conviction, it remained more likely than not that because of the interrelationship of the drug traffickers the military, and the government, that retribution would still

be sought against him bedause of his cooperation with the DEA
and that torture would result. In contrast, the case relied on
by the BIA for its ruling, did involve any claim that the torture
was likely as a result of the Petitioner's cooperation with the
United States Government as an informant.

Moreover, six out of the thirteen-memeber en banc board that
decided Matter of M.B.A, strongly dissented from its ruling that
the likelihood of torture had not been established by evidence
regarding the enforcement of Nigerian drug Laws. Id.at 480-87
(Rosenberg, Board Member, concurring in part, dissenting in
part): Id. at 487-90 (Schmidt, Board Member, dissenting).

    Following petitioner's arrest his sibliing's contacted attoney
Pelino, who was then practicing in Arizona. According to Pelino
he claimed to have no knowledge of the appeal pursued by the INS.
Petitioner retained new counsel to file a motion to reopen his
case. On February 15, 2005, the BIA denied the motion because it
had not been filed within 90 days of its May 30, 2003 decision.
The BIA ruled that despite Petitioner's claim that neither he nor
his attorney were notified of the appeal, the record indicates
that the Notice of Appeal (EOIR Form 26) was mailed to Petitioner
former attorney at the last known address in the file. [Exhibit 20]
The BIA in their normal unjust pattern failed to address the fact
that their erronous address used in sending me service was
primarily responsiblble for my failure to know an appeal was
filed against me. Because if they did not make an error the
failure of my former attorney in notifying me would have been
corrected. More so nothing was mentioned by the BIA who referred

to me in their May 2003 ruling as Pro Se.(Which meant I had no

counsel in that proceeding, which to my position at the time was

the fact.

At this stage of my life after enduriring two and half years of

torturous detention in states far away from my family, and after

spending all my life savings paying legal fees, I parted with my

former counsel soon after my case in December 16th 1999.

I believed that he never sought permission from me to represent me

in any pending appeal and I dont recall him asking my permission

to represent me in any pending case.

        Petitioner initiated habeas corpus proceedings in the Feder-

al District Court of Massachusetts on March 17, 2005. In his

petition, Petitioner asserts both procdural and substantive due

process claims. First Petitioner argues, the BIA's May 30 2003

decision and its february 15, 2005 order denying his motion to

reopen deprived him of procedural due process as he was not

afforded sufficient notice of appeal of the hearing officer's

CAT determination. Second Petitioner argues that the BIA's order

of removal violates his substantive due process rights because

returning him to Nigeria subjects him to a government-created

danger.

        On April 11, the Court granted Petitioner's Emergency Ex

Parte Motion for stay of Deportation and scheduled an evidentiary

hearing. The Court conducted an evidentiary hearing over the

course of four days and heard testimony from Agents Lemon and

Pettigrew as well as Petitioner. At the close of evidence on May

3, 2005, the District Court took the matter under advisement at

the hands of the Hon Chier Justice William G. Young presiding.

Portions of Petitioner's evidentiary hearing were observed by members of the news media. As a result, several news stories circulated about petitioner's case. Stories featured on the Boston Globe, Boston Herald, New York times, L.A. times and on the Nigerian news website "Nigerian Digital" noted that Petitioner had been a government informant and that he feared for his life upon returning to Nigeria.

Respondents in recognition of the danger they have since exposed petitioner to, immediately removed him from the general jail population for his safety. Two weeks after Petitioner was put in isolation (which is torturous to say the least) Respondents realized that the impending danger was still existent because the inmates in isolation have access to newspapaers and they are more dangerous to Petitioner.

With no place to accomodate Petitioner in Suffolk House of Corrections in Boston, Petitioner was transferred to Bristol House of Corrections in North Dartmouth Massachusetts. Petitioner found out in BHOC in N.Dartmouth that the news was already exposed to the inmates there. Some of the inmates there were transferred from Boston and knew me in Boston. I was moved by management to another unit were they claimed I will be watched and rescued in case of any sudden attack. This unit is a dormitory where every inmate is exposed to one another.

I immediately used all resources available to me to hide my story but was unsuccessful because a few other detainees in this unit knew me from Boston and have spread the news around.

I tried to buy protection after all my complaints to the ICE
were ignored. I was counting the days by the minute hoping my
case will be resolved soon and I will hopefully avoid any
dangers before it came. Some detainees here have come out openly
threatening to end my life and all my complaints to the ICE
authorities have been ignored. Most people refer to me as a
snitch and I am always on the alert all day and most nights
looking out for the apparent danger.

On May 11, 2005 Congress enacted a new law ordering all
cases in the District Court be transferred to the Court of
appeals even Petitioner's case that is already pending is
affected. For the past two and half months I have been living in
fear and the danger is comfronting me everyday because some
detainees here who really hate me make sure they pass on the
information to new arrivals. My heart blood pressure have been
uncontrollable due to the stress I am subjected to daily.

On July 12, 2005 the District Court of Massachusetts,
(Civil Action NO. 05-10511-WGY) under The Hon Chief Judge William
C. Young made a ruling in his "ORDER OF TRANSFER REPORT AND
RECOMMENDATION. In a 107 pages of ruling the Court concluded
that the actions of ICE really shocks the conscience and finally
recommends that Petitioner be released at once and the case be
adminstratively closed. This unprecedented ruling vindacated my
cause and struggle to avoid torture and death at the hands of
my enemies.What I did not anticipate however wasthe extent this
ruling will go to endager my life in custody. This ruling was
published in the newspapers and is easily accessible in the

14·

internet.

My case have now been transferred to the Court of Appeals and there is no time table when the Court will rule on my case. The story is exposed among my fellow detainees and most of them facing deportation are a real danger to me because they believe the government is giving me a break for betraying fellow inmates.

I have written ICE to consider releasing me on Bond Or Conditinal release pending the resolution of this case due to the present danger I face in custody.

I have also represented to them to consider my release for the follwing reasons;

1. Petitioner has no history of escapes or willful failure to appear for judicial or other proceedings.

2. Petitioner has absolutely no disciplinary problems while incacerated. Infact he is a model detainee and has been commended for his examplaryconduct.

3. The equities in the United states strongly favor someone of Petitioner's overall record, background, and history in this country.

4. Petioner has a solid family network right here in Massachusett

5. He has also a solid network of non-family support here in Massachusetts.

6. He is not a flight risk given his 20 years in the Boston area and his strong network of family and friends in Massachusetts coupled with his fear of returning to Nigeria (and facing the same folks whose convictions he helped secure).

8. Petitioner's case has a realistic chance of providing a fair and just solution through existing federal judicial channels in Massachusetts.

9. Petitioner have endured three and half years of detention in ICE custody around the country. He is 56 years old and suffering from a lot of life-threatening diseases. [Exhibit 2✦] There is a limit of custody time, when there are no new charges pending against him. This Court should step in now and save petitioner from impending state-created danger in custody and secure the rights of this Petitioner against overreaching by the executive. My life is in danger here in custody.

10. Petitioner has until the end of this month to renew his realtors licence and failure to do that will be costly for him.

11. Petitioner have never had any opportunity to spend any quality time with his children. His older boys grew up in Nigeria without him due to his fear of his life in Nigeria. They joined him here in 2001 after they were grown men. All errorts to bond with his children were dashed in 2004 when he was arrested again and have been in detention since then. His fourth son who was born here is 11 and was only three when his dad was detained in1997. We saw each other again in 2001 and my detention again in 2004 have been very tough on him.

12. Petitioner have instructed the medical Dept of Bristol House of Corrections to send his medical records to this Court to expose his medical condition.

16.

1. STATE-CREATED DANGER THEORY OF
DUE PROCESS PROTECTION

The Supreme Court in Deshaney v. Winnebago County Dep't of
SOC. Servs., 489 U.S 189, 197 (1988), held that, as a
general matter,the Due Process Clause does not obligate the
government"to protect an individual against private violence."

    In Deshaney, however, the Supreme Court also recognized a
distinction between the case before it and other cases in which
the state created the risk faced by the plaintiff...." Soto v
Flores, 103 F .3d 1056, 1063 (1st Cir. 1997) cert denied, 522
U.S. 819 (1997) (citation omitted, emphasis added). In other
words, while

>     there is no constitutional right to be protected by
>     the state against being murdered by criminals....[i]f the
>     state puts a man in a position of danger from private
>     persons and then fails to protect' it will not be heard
>     to say that its role was merely passive; it is as much an
>     active tortfeasor as if it had thrown him into a snake pit.

Bowers v. De Vito, 686 F . 2d 616, 618 (7th Cir, 1982) (Posner,J)
(cited with approval by the first Circuit in Soto, 103 F 3d at
1063 n. 6) Thus in certain cases "an affirmative constitutional
duty to protect" an individual from private violence "may arise".
Rivera v. Rhode Island, 402 F .3d 27,  34 (1st Cir 2005).

    The Soto court observed that in Deshaney , the Supreme COURT
acknowledged that state actions that create dangers or render
private citizens vulnerable to harm could amount to constit-
utional violations."

    The Court observed that in order to establish any substantive

17·

due process claim, a plaitiff must first point to a deprivation of protected interest in life, liberty, or property.

Second, the Court noted, a plaintiff must show that the deprivation of her protected rights was caused by governmental conduct. A plaintiff must also show that state's conduct was so egrgious so outrageous, that it may be fairly said to shock the contemporary conscience." Id. at 36 ( quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8 (1998).

The Court noted observed that conduct which is intended unjustifiably to injure an individual is the type most likely to rise to this level. Id. at 36 ( citation omitted). " Of course, whether behaviour is conscience shocking varies with regard to

the circumstances of the case. In  situations where actors have an opportuinities to reflect and make reasoned and rational decisions, deliberately indifferent behaviour may suffice to shock the conscience."  Id. (citations omitted).

In making his argument under the state-created danger exception to DeShaney's general rule, Petitioner also cites a special relationship exception to DeShaney under which violence erupts and the state is obligated to protect an individual from that private violence when it restraints that individual against his or her will. It is only the harm to which an individual's custody at the hands of the state renders her vulnerable that the state must therefore protect against.

In this case Petitioner contends that his continued detention and exposure as a government informant in custody deprives him

18.

of his life as well as his liberty interest in being free from
harm by an inmate population that is violent agaist government
informants. Petitioner's interest in being free from torture and
harm is constitutionally protected. See, e.g., Furman v. Georgia,
408 U.S. 238, 319 (1972) ( Marshall, J., concurring) (stating "
there is no doubt whatever that in ...the eight Amendment, our
Fathers intended to outlaw torture"); See also Kane v.Winn
319 F. Supp. 2d 162, 193-94 (D. Mass. 2004) (emphasizing the
well-understood principle that the eight Amendment, as well as
customary international Law, " probit torture. Although these
alleged deprivations are happening now in some order Petioner
(logically) is permitted to seek preenforcement relief to stop
the torture he is enduring now and prevent such constitutional
violations from occurring on a more serious scale. See Auburn
Police Union v. Carpenter, 8 F.3d 886 889 (1st Cir 1993)
(seeking declaratory relief prior to enforcement of act).

   In addressing Petitioner's case we should look at McIntyre v.
United States, 336 F supp. 2d 87, 115 (d. Mass 2004).  Where the
government's affirmative acts render a citizen more vulnerable to
private violence," that individual have a constitutional right to
be protected from such violence. Id. at 113 (emphasis added).
The court noted that the first Circuit requires government
protection from private violence " only when  the government's
affirmative acts place the person in a worse position than...
had it not acted at all. Id  at 114 ( alteration in original,
internal quotation marks and citation omitted, emphasis added).
My case published in newspapers and my court presidings not
sealed have revealed to the jail population where I am housed

that I am a government informant. Just like in McIntyre,
revealing to known mueders that one of their associates is
an informant. Cooperating with the government unquestionably
endangers the safety of that informant especially in custody.
Petitioner's substantive due process right have been violated
and the government should act at once to prevent further damage.
The United States  may not ... recklessly remain ignorant of
its own informants, nor may it [profess innocence] as though the
right hand knows not what the left hand does In re Application
for interception Of Wire Communications , 2 F Supp. 2d 177, 178
(D. Mass. 1998) (Young, C.J.), quoting United States v. Sullivan,
586, F Supp. 1314, 1318 (D. Mass. 1984) The executive have
pledged ignorance of the danger they are exposing me to here in
custody at BHOC. Even though they were quick to transfer me awaw
from their detention in Boston when they found out my safety was
endangered.
The action of ICE at this particular time is conscience-shocking
They are not definitely serving any government interest to keep
me in detention at the risk of violence and injury.
Admittedly, the term " conscience-shocking is far from self-
defining. The Supreme Court has observed that " the measure of
what is conscience shocking is no calibrated yard stick
[although] it does point the way. County of Sacramento, 523,U.S.
at 847 [quotations omitted] There are however some clear markers
on the measuring stick: "Liability for negligently inflicted harm
is categorically beneath the treshhold of constitutional due
process"

While conduct intended to injure in some way, unjustif-
iable by any government interest, is the sort of official action
most likely to rise to the conscience shocking level. Id at 849
Official acts falling somewhere between these two benchmarks
" may be actionable" depending on the circumstances. Id.

   In Petitioner's case the Government 's motive to deport him
from the United States have overshdowed their sence of fairness
and justice. An example of this practice is the BIA's deliberate
and shoddy and thoughtless analysis of petitioner's case.
The idea it took the BIA four years to overturn Petitioner's
case is a no brainer. They were desperately looking for a
precedent case to overturn the hearing Officers thoughtful
judgement and they found it in the shoddy performance in
Matter of M-B-A. They did not care to consider all the issues .
The refused to reopen my case even though the record shows they
were at fault in using an incorrect address.
While the Government is fighting hard to preserve the ability and
uniformity of the executive branch to deport non-citizens from
its shores, even though their ultimate philosophy is understand-
able for its citizens and debatable for non-citizens, its
methods clearly are not fair since they"shock the conscience"
of the civilized democratic society when the life and liberty of
an imprisoned individual is at stake and taken for granted.

THE PETITIONER HAS BEEN DETAINED IN CUSTODY FOR OVER
THITY FIVE MONTHS - THIS LENGHT OF DETENTION TIME IN
IMMIGRATION PROCEEDINGS BECOMES UNREASONABLE AND UNNECESSARY

The Attorney General is authorized by statue todetain
an alien who is removable for a period of 90 days. However the
Supreme Court has held thatan alien post-removal period deten-
tion be limited to the period necessary to bring about the
alien's removal from the UNITED States to £ six months.
Zadvydas v. INS, 533 U.S 678 at 689 (2001). After six months
an alien for whom there is no significant likelihood of removal
in the reasonable forseeable future must be released from custody
Id., at 701 The Government bears the burden of disproving the
Petitioner's good reason to believe that there is no significant
likelihood of removal in the reasonable foreseeable future.
See Zhou v. Farquharson, U.S. Dist. Lexis 18239, (d. Mass 2001)
Petitioner's case even though it has been transferred to the
Court of Appeal due to "RIDA" the 107 Pages judgement by the District
Court and its recommendations  is enough proof that Petitioner is
going nowhere in the near future.
Infact there is a 99% chance that the recommendation will hold
in the Court of Appeal level. (see  judgement of distict Court
Civil Action No. 05-10511-WGY . Hon Chief Judge Young , C. J
July 12, 2005).
If not for the new Law "RIDA" this case would be adminstratively
closed by now.

For the interest of fairness and justice and protection of
my right to liberty and life this detention should be suspended
immedeately pending the ruling from the Court of Appeal.

22.

<u>PRAYER   FOR   RELIEF</u>

WHEREFORE, Petitioner, FRANK IGWEBUIKE ENWONWU, prays that
Honorable Court grant the following forms of relief:

1. Assume jurisdiction over this matter

2. Grant Petitioner Writ Of Habeas Corpus directing the
   Respondents to immediately release Petitioner from custody
   either on Bond or Supervised release as they seem fit and
proper.

3. Grant any other and/or further relief which this Honorable
Court  deems just and proper.

                              Respectfully submitted,
                              FRANK IGWEBUIKE ENWONWU, _Frank Enwonwu_
                              pro se
                              Bristol House of Corrections
                              400 Faunce Corner Road
                              North Dartmouth MA 02747
                              Inmate # 135336 Unit G-C Room 6

DATED: 8 - 3 - 05

23.

CERTIFICATE  OF  SERVICE

I Frank Igwebuike Enwonwu, Pro Se, do hereby certify that

I have on this ___8 - 3 - 05___ served via United state

Postal Service, a true copy of the PETITIONER'S petition

for release by filing a Habeas Corpus Motion to


Frank Crowley
Special Assistant U.S. Attorney
Department of Homeland Security
P.O Box 8728
JFK Station
Boston, MA 02114


Signed under the pains and penalties of perjury.


Frank Igwebuike Enwonwu Pro Se
Bristol House of Correction
400 Faunce Corner Road
North Dartmouth Ma 02747
inmate # 135336 Unit G-C


Dated ___8 - 3 - 05___

Form 2A

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

FRANK ICHWEBUIKE ENWONWU
Pro Se

**DEFENDANTS**

Michael Chertoff, Interim Field
Bruce Chadbourne, office Director
DHS/BICE, et. al.

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed ____ Suffolk
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Pro Se

Attorneys (If Known)

# 05-1166 3 WGY

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIW C/DIW W (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☒ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | State Statutes |
| | | ☐ 550 Civil Rights | Security Act | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241

(Petitioner is detained by Bureau of Immigration + Customs Enforcement)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

Form 2A

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)_____

_____

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See

    local rule 40.1(a)(1)).

    ☐    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ☐    II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

    ☐    III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,      05 - 11666WG
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

    ☒    IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

    ☐    V.    150, 152, 153.

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in
    this district please indicate the title and number of the first filed case in this court.

    _____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                     YES ☐    NO ☐

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See
    28 USC §2403)

                                                                     YES ☐    NO ☐

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                     YES ☐    NO ☐

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                     YES ☐    NO ☒

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule
    40.1(d)).

                                                                     YES ☒    NO ☐

    A.   If yes, in which division do all of the non-governmental parties reside?

         Eastern Division ☒         Central Division ☐         Western Division ☐

    B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
         agencies, residing in Massachusetts reside?

         Eastern Division ☐         Central Division ☐         Western Division ☐

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If
    yes, submit a separate sheet identifying the motions)

                                                                     YES ☐    NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _____PRO SE_____

ADDRESS _____

TELEPHONE NO. _____

(Coversheetlocal.wpd - 10/17/02)

The Clerk's office,
U.S. District Court for the District of Massachusetts,
John Joseph Moakley U.S. Courthouse
One Courthouse Way,
Boston, MA 02210

355, Medford Street, Apt #1
Somerville, MA. 02145
8/05/05

Re:                    Frank I. Enwonwu
Civil Docket #: 0.     To be announced
                       **(Case Filed By Frank I. Enwonwu
                       Against
                       INS)**

**05 - 116 3 6 WGY**

Dear Sir, or Madam,

Enclosed please find the five-dollar fee, in **Money Order # 08394273213, dated 8/03/05
PO. (021451**) issued in favor of CLERK'S OFFICE , herewith enclosed to register with
this court, a case filed by Frank I. Enwonwu against the INS.

Frank I. Enwonwu remains in detention in the custody of INS, and is therefore unable to
personally purchase M/O for purpose of paying this fee.

Kindly acknowledge receipt of the payment of the ($5.00) Five-dollar fee, which has
been properly paid to this office.

Sincerely,

Adeline N. Amazu        617 - 623 - 9926
(On behalf of:)

FRANK I ENWONWU
BRISTOL COUNTY HOUSE OF CORRECTION
Unit G-C       ROOM –06
INMATE # 135336
400 Faunce Corner Road,
NORTH DARTMOUTH,
MA-02747

FRANK   ENWONWU

Bristol House of Corrections

400  Fauna Corner Road

N. Dartmouth MA 02747

Inmate #  135336

8 - 3 - 05

Clerk" Office

John Joseph Moakley

U.S. Courthouse

I Courthouse Way, Suite 2300

Boston  MA   02210

CA 11666

Dear Sir,

        Enclosed  is  a  Petition  for  Writ

of   Habeas  Corpus  filed  Pro Se.

This  is  a  second  petition  filed  on  my behalf

Because  I  cannot  afford  legal  fees  to

continue  my  battle, I have  filed this petition

Pro  Se.

My  sister  Adeline  Amaya  will  send  in

my  filing  fees  of  five  dollars  via

money  order  immediately.

        Because  I  cannot  have  access  to  my

legal  file,  which  is  with  my  attorney,

I  am  asking  the  Court  to  transfer

my  exhibits  I  through  20  in  my  former

Civil  Action  File  No.  05 - 10511  WGY to

this  new  petition. Because  the  statements  of

facts are the same in both pentions the exhibits are same. Thanks.

Sincerly Submitted

Frank Fawwrwn.

A # A 19337631

Soc No: 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.

P/S I have also signed a letter of release of my medical records from the above institution where I am detained to be sent to this Court in relation to this new petition. I hope it gets to this Court in time.

Thanks.

Frank Fawwrwn.

8-3-05

Frank Enworwu
466 Faunce Corner Road
N. Dartmouth MA 02747
Inmate # 585336
Unit Cr-c (Bitoc)
8-4-05
Soc # 016 45 0737

Clerk's Office
John Joseph Moakley **CV 11666**
U.S. Courthouse
I Courthouse Way, Suite 2300
BOSTON, MA 02210

Dear Sir,

I am enclosing the exhibits in my recently filed case in your Court petitioning for release on bond or Supervised release.

I have just received my file from my attorney and I am sending in the exhibits. Please disregard my former request to refer to my former case Civil Action file No. 05 - 10511 WGY to access the exhibits.

Thanks for your understanding.

Sincerly Submitted
Frank Enworwu
5-4-05

EXHIBITS:

FRANK    ICHWEBUIKE    ENWONWU

Vs

05 - 116 = = WGY

MICHAEL    CHERTOFF
BRUCE    CHARDBOURNE
HOMELAND    SECURITY
THOMAS    HODGESON  ( Bristol  HOC )

A #   19337631

Sec #   016 - 48 - 0737

## AFFIDAVIT

I, Herbert J. Lemon, being duly sworn, depose and state as follows:

1.    I am a Special Agent of the U.S. Drug Enforcement Administration and have been so employed for fifteen (15) years.

2.    On January 20, 1986, at approximately 7:00 p.m. I was advised by the U.S. Customs Service that defendant FRANK IKE ENWONWU had been arrested at Logan International Airport, Boston, Massachusetts, upon the discovery of approximately five (5) ounces of heroin concealed within the defendant's body.

3.    According to Customs Inspector Woo, the defendant arrived at Logan Airport at about 3:15 p.m. on Swissair Flight 128 from Nigeria by way of Zurich, Switzerland.  The defendant presented a Nigerian passport.  Examination of his ticket disclosed that it had been paid for in cash.  The defendant stated that he intended to stay for one week.  When asked how much money he had, the defendant presented a check in the amount of $4200.  In the experience and training of Inspector Woo, the presentation of a check as an indication of available assets is consistent with narcotics smuggling activities.  The defendant's luggage was searched and no contraband was discovered.

4.    After consultation with other Inspectors, defendant ENWONWU was subjected to a strip search.  Blood was observed on his underpants.  The defendant said he had "piles".  When asked if he was hiding something in his rectum, the defendant responded that he had three hundred dollars ($300) hidden there and had

**EXHIBIT – 1**

tried but was unable to pass the packet of money on the airplane. At that point, the defendant was asked to and signed a consent form authorizing a body cavity search.

5. The defendant was taken to Winthrop Hospital where a medical doctor discovered the existence of two (2) packets in the defendant's rectum. The defendant then admitted that he had two (2) packets of heroin and one (1) packet of cash hidden in his rectum. At approximately 6:30 p.m., the defendant passed the three packets. A field test on the two packets of suspected heroin (approximately 130 grams) reflected the presence of opium derivatives. The defendant was returned to Logan Airport and arrested.

6. At approximately 8:30 p.m., I arrived at Logan Airport and took custody of the defendant and the heroin.

HERBERT J. LEMON
Special Agent

Dated:   January 24, 1986

Subscribed and sworn before me this 24th day of January, 1986.

LAWRENCE P. COHEN
U.S. Magistrate

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CR. **86-30**-T

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CRIMINAL NO. |
| | ) |
| | ) VIOLATIONS: |
| v. | ) 21 U.S.C. Sections 952, |
| | ) 960, 963 - Importation of |
| | ) Heroin; 21 U.S.C. Section |
| FRANK IKE ENWONWU | ) 841(a)(1) - Possession of |
| | ) Heroin with Intent to |
| | ) Distribute |
| | ) |

I N D I C T M E N T

Count One: (21 U.S.C. 952, 960, 963 - Importation of Heroin)

The Grand Jury charges that:

1. On or about January 20, 1986, at Logan International Airport, in the District of Massachusetts,

FRANK IKE ENWONWU

defendant herein, did knowingly and intentionally import and attempt to import into the United States from a place outside thereof, a quantity of heroin, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 952, 960 and 963.

**EXHIBIT - 2**

<u>Count</u> <u>Two</u>:   (21 U.S.C. §841(a)(1) - Possession of Heroin with
                Intent to Distribute)

The Grand Jury further charges that:

     1.  On or about January 20, 1986, at Logan International
Airport, in the District of Massachusetts,

                    FRANK IKE ENWONWU

defendant herein, did knowingly and intentionally possess heroin,
a Schedule I controlled substance, with intent to distribute;

     All in violation of Title 21, United States Code, Section
841(a)(1).

**CRIMINAL**
## COURTNOTE FORM
### (PRE-TRIAL)

JUDGE/MAG. CODE: 1AC-JLA   3 5 86
DOCKET NO: 86-30-T
USA: Mitchell Dembin
DEFENDANT(S) NAME(S): Frank Ike Enwonwu
CLERK: M. Anderson
REPORTER: tape
DEFENSE COUNSEL: Owen Walker

### ARREST

| CHARGING INSTRUMENT | CHARGING DISTRICT | ARRESTING DISTRICT | DATE OF ARREST |
|---|---|---|---|
| ☐ Indictment ☐ Complaint ☐ Probable Cause ☐ Information ☐ Warrant | | | / / |

### U.S. CUSTODY

| DISTRICT OF CUSTODY | CUSTODY BEGIN DATE | CUSTODY END DATE | STATE/OTHER CUSTODY |
|---|---|---|---|
| | / / | / / | |

### FIRST APPEARANCE

| CHARGING INSTRUMENT | DATE |
|---|---|
| ☐ Indictment ☐ Information ☐ Complaint | / / |

### BAIL

Hearing Held Date 2/5/86 TIME: 1015   ☐ Bail Set ☒ Bail Reset  BAIL SET AT: released
Set For ☐ Reset For   ☐ Bail Continued as Set On

### COUNSEL

| FIRST APPEARANCE THROUGH CHANGE | DATE | TYPE | ☐ CJA ☐ PD | ☐ SELF ☐ RETAINED |

### ARRAIGNMENT

Held Date / / Time:   Pleas of ___ Entered On Counts ___   Govt. Response To
Set For ☐ Reset For   Counts to be Dismissed ___   U.O.A.D. Due / /
Motions Due By / /   Govt. Response By / /   Trial Date on Counts ___ ☐ Set For ☐ Reset For / / Time:

### HEARING OR CONFERENCE

Hearing ☒ Held ☐ Waived Date 2/ /   TYPE: ☐ Motions ☐ Status ☐ Scheduling
Conference ☐ Set For ☐ Reset For Time:   ☐ Removal ☒ Prel Exam. ☐ Addiction ☐ Mental/Physical

### CHANGE OF PLEA

Held Time:   Plea of ___ Entered on Cts. ___   Counts
Set For ☐ Reset For Date / /   Plea of ___ Accepted on Cts ___   To Be Dismissed
DISPOSITION ☐ Set For Date / /   Date Accepted into   Guilty Plea Withdrawn
PLEA ☐ Reset For Time:   PTD Program / /   on Cts ___ Date / /

### NOTES

released into 3rd party custody - motion for pre-trial release
and Orders on Release are to be impounded by
order of the court.
to report to pre-trial in person before noon M-F.
to not apply for passport - BEA has this passport

White – "Courtnea"   Yellow – "U.S. Attorney"   Pink – "Courtroom Deputy"   Gold – "Defense Counsel"

Pre-Trial Courtnote Form

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Criminal No.
86-30-T

UNITED STATES OF AMERICA

v.

FRANK IKE ENWONWU

ORDER
ON
RELEASE

FEBRUARY 5, 1986

ALEXANDER, M.,

On this date, the defendant appeared before this Court for further hearing on bail.  Defendant was represented by Owen Walker, Esquire and the government by Mitchell Dembin, Esquire, Assistant United States Attorney.

After consideration of the defendant's family ties, financial resources, health, and lack of a prior record, the Government recommended, and this Court hereby orders that defendant be released into the custody of Mr. Douglass Clott[1] with the following conditions:

1.    Defendant shall not apply for a passport;

2.    Defendant shall report to pre-trial services every Monday, Tuesday, Wednesday, Thursday and Friday in person during the period of his release;

_____

[1]Mr. Clott resides at 44 Bigelow Street, Cambridge, Massachusetts.

EXHIBIT – 4

3.  Defendant shall not commit any Federal, State or Local crime during the period of his release; and

4.  Defendant shall not violate the provisions of 18 U.S.C. § 1503 (relating to intimidation of witnesses, jurors and officers of the court), 18 U.S.C. § 1510 (relating to obstruction of criminal investigations), 18 U.S.C. § 1512 (tampering with a witness, victim or an informant) and 18 U.S.C. § 1513 (retaliating against a witness, victim or an informant).

The defendant is hereby advised that if he violates any condition of his release he will be subject to a revocation of his release, an order of detention, and a prosecution for contempt of court.  18 U.S.C. § 3146(a).  Furthermore, if the defendant is convicted of an offense committed while released pursuant to this Order, he shall be sentenced to a consecutive term of not less than two years and not more than ten years if the offense is a felony or a term of not less than ninety days and not more than one year if the offense is a misdemeanor, in addition to the sentence prescribed for the offense.  18 U.S.C. § 3147(1)-(2).

Moreover, the defendant is hereby advised that if he fails to appear when required, he is subject not only to a fine of not more than twenty-five thousand dollars ($25,000) and/or imprisonment for not more than ten years to be served consecutively to any other sentence imposed, but also to have the bond or money deposited with this Court, declared forfeited to the United States.

SO ORDERED.

UNITED STATES MAGISTRATE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                             )
              v.             )     Criminal No. 86-030-T
                             )
FRANK IKE ENWONWU            )
_____)

## DISMISSAL OF COUNT TWO

Now comes William F. Weld, United States Attorney for
the District of Massachusetts, and pursuant to Rule 48(a),
Fed.R.Crim.P., hereby dismisses Count Two of the above-
captioned indictment.  As reason therefor, the United States
notes that the defendant entered a guilty plea to Count One
of the indictment on February 19, 1986, and was sentenced
on said count on March 21, 1986.

                      Respectfully submitted,

                      WILLIAM F. WELD
                      United States Attorney

                      By:

                      RICHARD G. STEARNS
                      Chief, Criminal Division

LEAVE TO FILE GRANTED:

JOSEPH L. TAURO
United States District Judge

Dated: 3/24/86

EXHIBIT - 5

EFENDANT

DOCKET NO — 86-30-T

# JUDGMENT AND PROBATION/COMMITMENT ORDER AO 245 (5 82)

**COUNSEL**

In the presence of the attorney for the government the defendant appeared in person on this date ——→

| MONTH | DAY | YEAR |
|---|---|---|
| March 21, 1986 | | |

|___| WITHOUT COUNSEL    However the court advised defendant of right to counsel and asked whether defendant desired to have counsel appointed by the court and the defendant thereupon waived assistance of counsel

|_XX_| WITH COUNSEL  |___ OWEN S. WALKER _____
(Name of Counsel)

**PLEA**

|_XX_| GUILTY, and the court being satisfied that    |___| NOLO CONTENDERE,    |___| NOT GUILTY
there is a factual basis for the plea,

**FINDING & JUDGMENT**

There being a finding/verdict of

|___| NOT GUILTY. Defendant is discharged

|_XX_| GUILTY.

Defendant has been convicted as charged of the offense(s) of

IMPORTATION OF HEROIN, IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTIONS 952, 960 and 963.

**SENTENCE OR PROBATION ORDER**

The court asked whether defendant had anything to say why judgment should not be pronounced. Because no sufficient cause to the contra... was shown, or appeared to the court, the court adjudged the defendant guilty as cha... and convicted and ordered that  The defendant... hereby committed to the custody of the Attorney General or his authorized representative... imprisonment for a period of

FIVE (5) YEARS, EXECUTION OF SENTENCE SUSPENDED: DEFENDANT PLACED ON PROBATION FOR A PERIOD OF THREE (3) YEARS.

SPECIAL PAROLE TERM OF THREE (3) YEARS.

**SPECIAL CONDITIONS OF PROBATION**

MANDATORY $50 SPECIAL ASSESSMENT.

**ADDITIONAL CONDITIONS OF PROBATION**

In addition to the special conditions of probation imposed above, it is hereby ordered that the special conditions of probation... reverse side of this judgment be imposed. The Court may change the conditions of probation... or extend the period of probation at any time during the probation period or within a maximum probation period... permitted by law... may... revoke probation for a violation occurring during the probation period.

**COMMITMENT RECOMMEN-DATION**

The court orders commitment to the custody of the Attorney General and recommends

It is ordered that the ... deliver a certified copy of this judgment and commitment to the U S Marshal or other qualified officer...

**SIGNED BY**

|_XX_| U S District Judge

|___| U S Magistrate

EXHIBIT – 6

April 11, 1986

Date

PROB 7
(3/73)

**Conditions of Probation**
FILED
UNITED STATES DISTRICT COURT
FOR THE
Mar 24  4 33 PM '86
District of Massachusetts

US DISTRICT COURT
DISTRICT OF
MASSACHUSETTS

To _____ Frank De Prisca _____ Docket No.  86-00030-r
44 Bigelow Street
Address ____ Cambridge, MA  02138 _____

CRIMINAL INFRAC

In accordance with authority conferred by the United States Probation Law, you have been placed
on probation this date,  March 21, 1986 _____, for a period of  5 years _____ by the
Hon.  Joseph L. Tauro _____ United States District Judge, sitting in and for this District
Court at  Boston, Massachusetts.

CONDITIONS OF PROBATION

It is the order of the Court that you shall comply with the following conditions of probation:

(1)  You shall refrain from violation of any law (federal, state, and local). You shall get in touch im-
mediately with your probation officer if arrested or questioned by a law-enforcement officer.
(2)  You shall associate only with law-abiding persons and maintain reasonable hours.
(3)  You shall work regularly at a lawful occupation and support your legal dependents, if any, to
the best of your ability. When out of work you shall notify your probation officer at once. You shall con-
sult him prior to job changes.
(4)  You shall not leave the judicial district without permission of the probation officer.
(5)  You shall notify your probation officer immediately of any change in your place of residence.
(6)  You shall follow the probation officer's instructions.
(7)  You shall report to the probation officer as directed.

The special conditions ordered by the Court are as follows:

5 years C&G, SPT 3 years, ESS, Probation 5 years, Probation Suspended, to be effective only when the
defendant is in the United States.      Special Assessment $50.

In order to insure compliance with the Conditions
of Probation, you must not serve as an informer
while on probation and you must promptly and
truthfully answer all inquiries directed to you
by the Probation Officer.

**EXHIBIT – 6**

I understand that the Court may change the conditions of probation, reduce or extend the period of
probation, and at any time during the probation period or within the maximum probation period of 5
years permitted by law, may issue a warrant and revoke probation for a violation occurring during the
probation period.
I have read or had read to me the above conditions of probation. I fully understand them and I will
abide by them.

(Signed) _____        3-21-86
                    Probationer                              Date

You will report as follows:

Thomas J. Weadock, Jr.          _____        3-21-86
Chief Probation Officer              U. S. Probation Officer                 Date
945 Post Office & Courthouse
Boston, MA  02109

UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service ( exhibit - )

PLEASE REFER TO THIS FILE NUMBER

A19 337 631

Frank Igbiebuike ENWONWU
50 Fairlawn Ave
#B7
Mattapan, MA.

EMPLOYMENT
AUTHORIZED

Please note the below checked action which has been taken in your case.          Date:

☐ You have violated the terms of your admission as a nonimmigrant. Consequently, permission previously granted you to remain in the United States is rescinded. You are required to depart from the United States at your own expense on or before _____

☐ In accordance with a decision made in your case you are required to depart from the United States at your own expense on or before _____

☐ Your request for an extension of time in which to depart from the United States has been GRANTED _____ You are required to depart on or before December 24, 1986

You must notify this office, Room No. 710 on or before December 17, 1986 of the arrangements you have made to effect your departure, including the date, place, and manner.

Failure to depart on or before the specified date may result in the withdrawal of voluntary departure and action being taken to effect your deportation.

If there is a bond outstanding in your case, you are warned that to expedite cancellation of the bond and return of the collateral posted, you must make advance arrangements with this office to have your departure witnessed by an officer of this Service.

USE THE ENCLOSED SELF-ADDRESSED CARD TO NOTIFY THIS OFFICE REGARDING DEPARTURE ARRANGEMENTS, POSTAGE IS NOT REQUIRED. At the time of your departure, do not fail to surrender Form I-94, ARRIVAL-DEPARTURE RECORD, in accordance with instructions on that form.

Very truly yours,

William J. Sarge

FORM I-210
(Rev. 6-12-40)

| FOR IMMIGRATION AND NATURALIZATION USE ONLY | |
|---|---|
| Departed: | |
| Port _____ Date _____ ☐ I-94 stamped | ☐ I-530 submitted |
| To _____ Via _____ ☐ I-161 prepared | ☐ I-156 prepared |

notes. The information here on voluntary departure is untrue. This copy
was produced by the DEA agent MR Lemon during my trial on
-28-97. The true copies of my authorization issued me
annually did not have this involuntary departure clause
never lived in this address and worked with the DEA

Immigration and Naturalization Service    **Additional Charges of Inadmissibility/Deportability**

In:    ☒    Removal proceedings under section 240 of the Immigration and Nationality Act

☐    Deportation proceedings commenced prior to April 1, 1997, under former section 242 of the Immigration and Nationality Act

In the Matter of: ENWONWU, FRANK  /  A19 337 631  /  DETAINED

Date:  August 28, 1997

File No: A19 337 631               Address:  c/o SPC, 427 Commercial Street, Boston, MA  02113

There is/are hereby lodged against you the additional charge(s) that  you are subject to being taken into custody and deported or removed from the United States pursuant to the following provision(s) of law:

The § 212(a)(6)(A)(i) charge in the June 6, 1997, NTA is hereby withdrawn.

In support of the additional charge(s) there is submitted the following factual allegation(s) ☐ in addition to ☒ in lieu of those set forth in the original document:

THE ALLEGATIONS IN THE JUNE  6, 1997, NTA ARE STRICKEN AND REPLACED WITH THE FOLLOWING:

A.   You are an arriving alien.

1.   You are not a citizen or national of the United States;
2.   You are a native of Nigeria and a citizen of Nigeria;
3.   You arrived at Logan Airport, Boston, Massachusetts, on January 20, 1986, at which time you were discovered concealing heroin within your body.
4.   You were paroled into the custody of the United States Drug Enforcement Administration on January 20, 1986, for the purpose of prosecution.
5.   You were, on March 21, 1986, convicted in the United States District court, Boston, Massachusetts, for the offense of Importation of Heroin in violation of Title 21, United States Code,  Sections 952, 960, and 963.

_____8-28-97_____
Date

M. John D'Angelo
Assistant District Counsel
Boston, Massachusetts

EXHIBIT – 8

**Warrant for Arrest of Alien**

File No.  A19 337 631

Date:  June 6, 1997

To any officer of the Immigration and Naturalization Service delegated authority pursuant to section 287 of the Immigration and Nationality Act:

From evidence submitted to me, it appears that:

ENWONWU, Frank        Igwebuike
                              (Full name of alien)

an alien who entered the United States at or near _____ Unknown port in Boston _____ on
                                                                    (Port)
_____ January 20, 1986 _____ is within the country in violation of the immigration laws and is
               (Date)

therefore liable to being taken into custody as authorized by section 236 of the Immigration and

Nationality Act.

By the virtue of the authority vested in me by the immigration laws of the United States and the

regulations issued pursuant thereto, I command you to take the above-named alien into custody

for proceedings in accordance with the applicable provisions of the immigration laws and

regulations.

(Signature of authorized INS official)
Deputy District Director
(Print name of official)

June 6, 1997
(Title)

---

## Certificate of Service

Served by me at _INS, Boston, MA_ on _June 06, 1997_ at _Bishro_ .
I certify that following such service, the alien was advised concerning his or her right to counsel and was
furnished a copy of this warrant.

**EXHIBIT – 8**

(Signature of officer serving warrant)
Special Agent
(Title of officer serving warrant)

Form I-200(Rev. 4-1-97) N

IMMIGRATION COURT
JFK FEDERAL BLDG., ROOM 320
BOSTON, MA 02203

In the Matter of

ENWONWU, FRANK
    Respondent

Case A19-357-631

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Aug 28, 1997.
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[ ]  The respondent was ordered removed from the United States to NIGERIA.
[ ]  Respondent's application for voluntary departure was denied and
    respondent was ordered removed to NIGERIA or in the
    alternative to
[ ]  Respondent's application for voluntary departure was granted until
      upon posting a bond in the amount of $ _____
    with an alternate order of removal to
[ ]  Respondent's application for asylum was ( )granted ( )denied
    ( )withdrawn.
[ ]  Respondent's application for withholding of removal was ( )granted
    ( )denied ( )withdrawn.
[ ]  Respondent's application for cancellation of removal under section
    240A(a) was ( )granted ( )denied ( )withdrawn.
[ ]  Respondent's application for cancellation of removal was ( ) granted
    under section 240A(b)(1)  ( ) granted under section 240A(b)(2)
    ( ) denied ( ) withdrawn. If granted, it was ordered that the
    respondent be issued all appropriate documents necessary to give
    effect to this order.
[ ]  Respondent's application for a waiver under section _____ of the INA was
    ( )granted ( )denied ( )withdrawn or ( )other.
[ ]  Respondent's application for adjustment of status under section _____
    of the INA was ( )granted ( )denied ( )withdrawn. If granted, it
    was ordered that respondent be issued all appropriate documents necessary
    to give effect to this order.
[ ]  Respondent's status was rescinded under section 246.
[ ]  Respondent is admitted to the United States as a _____ until _____.
[ ]  As a condition of admission, respondent is to post a $ _____ bond.
[ ]  Respondent knowingly filed a frivolous asylum application after proper
    notice.
    Respondent was advised of the limitation on discretionary relief for
    failure to appear as ordered in the Immigration Judge's oral decision.
[ ]  Proceedings were terminated.
[ ]  Other: _____

Date: Aug 28, 1997
Appeal: (RESERVED)  Appeal Due By: Sep 29, 1997

          my resp.

LEONARD I. SHAPIRO
Immigration Judge

JG

EXHIBIT – 10

## LIMITATIONS ON DISCRETIONARY RELIEF FOR FAILURE TO APPEAR

1. You have been scheduled for a removal hearing, at the time and place set forth on the attached sheet. Failure to appear for this hearing other than because of exceptional circumstances beyond your control** will result in your being found ineligible for certain forms of relief under the Immigration and Nationality Act (see Section A. below) for a period of ten (10) years after the date of entry of the final order of removal.

2. You have been scheduled for an asylum hearing, at the time and place set forth on the attached notice. Failure to appear for this hearing other than because of exceptional circumstances beyond your control** will result in your being found ineligible for certain forms of relief under the Immigration and Nationality Act (see Section A. Below) for a period of ten (10) years from the date of your scheduled hearing.

3. You have been granted voluntary departure from the United States pursuant to section 240B of the Immigration and Nationality Act, and remaining in the United States beyond the authorized date other than because of exceptional circumstances beyond your control** will result in your being ineligible for certain forms of relief under the Immigration and Nationality Act (see Section A. below) for ten (10) years from the date of the scheduled departure or the date of unlawful reentry, respectively. Your voluntary departure bond, if any, will also be breached. Additionally, if you fail to voluntarily depart the United States within the time period specified, you shall be subject to a civil penalty of not less than $1000 and not more than $5000.

4. An order of removal has been entered against you. If you fail to appear pursuant to a final order of removal at the time and place ordered by the INS, other than because of exceptional circumstances beyond your control** you will not be eligible for certain forms of relief under the Immigration and Nationality Act (see Section A. below) for ten (10) years after the date you are scheduled to appear.

**the term "exceptional circumstances" refers to circumstances such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances.

THE FORMS OF RELIEF FROM REMOVAL FOR WHICH YOU WILL BECOME INELIGIBLE ARE:

1) Voluntary departure as provided for in section 240B of the Immigration and Nationality Act;

2) Cancellation of removal as provided for in section 240A of the Immigration and Nationality Act; and

3) Adjustment of status or change of status as provided for in Section 245, 248 or 249 of the Immigration and Nationality Act.

This written notice was provided to the alien in English. Oral notice of the contents of this notice must be given to the alien in his/her native language, or in a language he/she understands by the Immigration Judge.

Date: Aug 28, 1997

Immigration Judge: _____    or Court Clerk: _____

CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY: MAIL (M)    PERSONAL SERVICE (P)

TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN's ATT/REP  [ ] INS

DATE: _____    BY: COURT STAFF

Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other _____

V6

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
Boston, Massachusetts


File No.:    A 19 337 631                      August 28, 1997


In the Matter of
                              )
FRANK ENWONWU,                )    IN REMOVAL PROCEEDINGS
                              )
          Respondent          )


CHARGE:              (1)  Convicted of controlled substance
                          violation;

                     (2)  Involved in illicit trafficking.


APPLICATIONS:        Withholding of deportation.


APPEARANCES:

ON BEHALF OF RESPONDENT:          ON BEHALF OF SERVICE:

John Udo, Esquire                 M. John D'Angelo, Esquire
33 Kingston Street                Asst. District Counsel
Fourth Floor                      JFK Federal Bldg -.Rm 425
Boston, Mass.  02111              Government Center
                                  Boston, Mass.  02203


## ORAL DECISION OF THE IMMIGRATION JUDGE

This case comes before me pursuant to a Notice to

Appear dated June 6, 1997, wherein, the respondent is charged

with being an alien present in the United States, who has not

been admitted or paroled.  By way of the Notice to Appear, an

additional charge of deportability document, the Immigration

Service alleges that the respondent is a native and citizen of

Nigeria, who was paroled into the United States by the Drug

brp

Enforcement Administration after having been apprehended at the
airport with a quantity of heroine on his person.

The Immigration Service goes on to allege that the
respondent was ultimately convicted in the United States
District Court for the District of Massachusetts for
importation of heroine, sentenced to five years imprisonment,
and, accordingly, rendered removable from the United States.

The respondent, for his part, does not so much deny
the charges, as he indicates that arrangements have been made
with the Drug Enforcement Administration for him to remain in
the United States.  The respondent, after initially denying
most of the charges, other than being a native and citizen of
Nigeria, admitted that he arrived at Logan Airport and was
discovered concealing heroine within his body, and further
admits that he was convicted in the United States District
Court in Massachusetts for importation of heroine.

The evidence of record establishes that the
respondent was indeed convicted for importation of heroine in
violation of Title 21, U.S. Code, Sections 952, 960, and 963,
and was sentenced to five years imprisonment, the execution of
which was suspended, and, thereafter, the respondent was placed
on probation for a period of three years and special parole for
three years.  (See Exhibit 2).

As a result of this conviction, I find that the
charges of removability have been sustained by the Immigration

A 19 337 631                      2                    August 28, 1997

orp

Service by the appropriate legal standard.  And I further find
that the respondent is ineligible to apply for asylum or
withholding of deportation.  The respondent has been convicted
of an aggravated felony, sentenced to five or more years
imprisonment, and, therefore, is preclusively presumed to have
been convicted of a particularly serious crime.  There is no
requirement that the respondent be charged as an aggravated
felon, and, in fact, there is no corresponding ground of
removability in removal/inadmissibility proceedings.  The fact
of the matter is that the respondent was convicted of an
aggravated felony, that being the importation of heroine.  He
is clearly a person who is known to be an illicit trafficker in
heroine.  And, accordingly, he is not eligible for relief.

        For the reasons set forth above, the following order
will be entered:

ORDER

        IT IS HEREBY ORDERED that the respondent be removed
from the United States to Nigeria on the charges contained in
the Notice to Appear and additional charge of deportability.




                                    Leonard I. Shapiro
                                    Immigration Judge

A 19 337 631                3                August 28, 1997

:p

Service by the appropriate legal standard.  And I further find
that the respondent is ineligible to apply for asylum or
withholding of deportation.  The respondent has been convicted
of an aggravated felony, sentenced to five or more years
imprisonment, and, therefore, is preclusively presumed to have
been convicted of a particularly serious crime.  There is no
requirement that the respondent be charged as an aggravated
felon, and, in fact, there is no corresponding ground of
removability in removal/inadmissibility proceedings.  The fact
of the matter is that the respondent was convicted of an
aggravated felony, that being the importation of heroine.  He
is clearly a person who is known to be an illicit trafficker in
heroine.  And, accordingly, he is not eligible for relief.

      For the reasons set forth above, the following order
will be entered:

### ORDER

      IT IS HEREBY ORDERED that the respondent be removed
from the United States to Nigeria on the charges contained in
the Notice to Appear and additional charge of deportability.


Leonard I. Shapiro
Immigration Judge

A 19 337 631                    3                    August 28, 1997



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*

*Appeals Processing Unit*
*5107 Leesburg Pike, Suite 1711*
*Falls Church, Virginia 22041*

UDO, JOHN
33 KINGSTON ST., 4TH FL.,
BOSTON, MA 02111-0000

District Counsel, USINS
JFK Federal Building, Room 425
Boston, MA  02203

Date of this notice: 9/26/97

Name: ENWONWU, FRANK

A#: 19-337-631

Date Received by Board: 9/26/97

## FILING RECEIPT FOR APPEAL

The Appeals Processing Unit of the Board of Immigration Appeals acknowledges receipt of your appeal and fee or fee waiver request, where applicable, in the above-referenced case.  Please refer to the above A# in any correspondence or filings with the Board.  If multiple family members are appealing, please list the lead A# first and then the additional family members.

PLEASE NOTE:

1. _____ There is no filing fee for a bond appeal.  Therefore, we are returning to you your check(s) or money order(s) in the amount(s) of:

    $_____, $_____, $_____

2. _____ The filing fee for an appeal before the Board is $110.00.  We are returning to you your additional check(s) or money order(s) in the amount(s) of:

    $_____  $_____

STOMER'S RECEIPT  DO NOT SEND THIS RECEIPT FOR PAYMENT
KEEP IT FOR YOUR RECORDS

.7330874643  970925   021090  *110*00

| SERIAL NUMBER | YEAR, MONTH, DAY | CHECKWRITER IMPRINT AREA | POST OFFICE | U.S. DOLLARS AND CENTS |

U.S. Dept. of Just.     CHECKWRITER IMPRINT AREA   ###110*00¢

FROM  Frank Enwonwu
ADDRESS  A# 19337-631

NO. OR
FOR

An inquiry Form 6401 may be filed at any time for a fee. A ... until 60 days after the money order

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

FRANK ENWONWU,

       Petitioner,

vs.                                    5:98cv210/RH-2/MD

JANET RENO,
Attorney General
of the United States,

       Respondent,

---

### RESPONSE OF ATTORNEY GENERAL JANET RENO

    Janet Reno, the Attorney General of the United States, responds in opposition to the petition of Frank Enwonwu and states:

### Statement of Material Facts

    Petitioner, Frank Enwonwu, is a native and citizen of Nigeria. On March 6, 1972, he was admitted to the United States as a student. See Exhibit "A." On September 25, 1975, he was granted an extension of stay until March 5, 1976. Id. Petitioner failed to depart the United States when his stay expired. On March 30, 1976, the United States Immigration and Naturalization Service ("INS") issued an Order to Show Cause and Notice of Hearing charging Petitioner with being subject to deportation pursuant to §241(a)(2) of the Immigration and Nationality Act ("the Act") for having remained in the United States for a longer time than permitted. See Exhibit "B." On April 14, 1976, an Immigration Judge granted


EXHIBIT - 13

Petitioner a voluntary departure date of July 14, 1976. <u>See</u> Exhibit "C." Petitioner did not file an appeal of the Immigration Judge's decision. Upon information and belief, Petitioner voluntarily returned to Nigeria and worked there until 1986.

On January 20, 1986, Petitioner attempted to enter the United States at Logan Airport, Boston, Massachusetts at which time it was discovered that he was concealing heroin within his body. <u>See</u> Exhibit "D." Petitioner was paroled into the custody of the United States' Drug Enforcement Administration for the purpose of prosecution. On March 21, 1986, Petitioner was convicted in the United States District Court for the District of Massachusetts, Boston Division, for the offense of importation of heroin. <u>See</u> Exhibit "E."

Eleven years later, on June 6, 1997, Petitioner appeared at the local INS office in Boston to inquire about his immigration status in the United States at which time the INS took him into custody. On the same day, INS issued a Notice to Appear charging Petitioner with being subject to removal pursuant to the following provisions of the Act: § 212(a)(2)(A)(i)(II) for having been convicted or having committed or admits committing a controlled substance violation; § 212(a)(6)(A)(i) for being an alien present in the United States without being admitted or paroled; §212(a)(2)(C) in that an immigration officer knows or has reason to believe he is a controlled substance trafficker; and § 212(a)(7)(A) for not being in possession of a valid entry document. <u>See</u> Exhibit "F." On August 8, 1997, INS issued Additional Charges of

2

> EXCLUSIVE JURISDICTION. Except as provided in this
> section and notwithstanding any other provision of law,
> no court shall have jurisdiction to hear any cause or
> claim by or on behalf of any alien arising from the
> decision or action by the Attorney General to commence
> proceedings, adjudicate cases, or execute removal orders
> against any alien under [the Act].

Section 242(g) of the Act, 8 U.S.C. § 1252(g) (as amended by IIRIRA

§ 306(a)). Detention during the removal period and thereafter

constitutes action incident to the execution of removal orders.

Carlson v. Landon, 342 U.S. 524, 538 (1952)(observing that

"[d]etention is necessarily a part of the deportation procedure").

Thus, § 242(g) of the Act precludes consideration of Petitioner's

claim. Since Petitioner is under a final order of removal, review

of such an order should have been sought in the appropriate Court

of Appeals via a petition for review.

   The plain language of § 242(g) clearly indicates that Congress

eliminated 28 U.S.C. § 2241 as a basis for habeas corpus

jurisdiction, except to preserve the Great Writ to the extent

required by the Constitution. In Yang v. INS, 109 F.3d 1185, 1195

(7th Cir. 1997), the Seventh Circuit found that § 306(a) of IIRIRA

abolishes even review under § 2241, leaving only the constitutional

writ, unaided by statute." See also Ramallo v. Reno, 114 F.3d

1210, 1214 (D.C. Cir. 1997) (following Yang, supra, finding that

section 242(g) is constitutional, but noting that aliens are still

free to raise "substantial constitutional questions").

   On September 2, 1998, the Eleventh Circuit issued a decision

in Auguste v. Reno, 140 F.3d 1373 (11th Cir. 1998). In this case,

which construes § 242(g) of the Act, the petitioner had been

4

admitted into the United States under the Visa Waiver Pilot Program
which allows aliens from certain countries to enter the United
States without a visa provided the alien agrees to waive his right
to contest any deportation action.  The Auguste court found that
§1252(g) divested the district court of jurisdiction to hear the
petition because it was clearly a "claim by [an] alien arising from
the decision ... by the Attorney General to ... execute removal
orders against [the] alien under [the Act], as contemplated by
section 242(g)."  The Auguste court further noted that under §1252,
as amended by the IIRIRA, judicial review of orders of removal may
only be initiated in a Court of Appeals.  Id.  The court in Auguste
observed that other circuits have concluded that § 242(g) divests
the district courts of jurisdiction, citing: Lalani v. Perryman,
105 F.3d 334, 336 (7th Cir. 1997)(deciding that § 242(g) applied
retroactively but did not become effective until April 1, 1997);
Ramallo v. Reno, 114 F.3d 1210, 1213 (D.C.Cir. 1997)(IIRIRA now
indisputably deprives both courts of appeals and district courts of
jurisdiction to decide claims arising from a removal order); Hose
v. INS, 141 F.3d 932, 935 (9th Cir. 1998)(the clear language of §
1252 divests district court jurisdiction to hear habeas petitions
challenging deportation orders).  Therefore, relying on the court's
reasoning in Auguste, § 242(g) of the Act divests this court of
jurisdiction to hear Petitioner's claim.

Petitioner is subject to detention pursuant to § 236 of the
Act, as amended by IIRIRA.  Section 236(c) of the Act requires that
the Attorney General take into custody any alien who is

5.

"inadmissible by reason of having committed any offense covered in INA § 21 2(a)(2)." Since Petitioner was found inadmissible under §§ 212(a)(2)(A)(i)(II) and 212(a)(2)(C), he is subject to mandatory detention.

## Petitioner Has Not Demonstrated That His Detention Gives Rise To A Substantial Constitutional Issue Amounting To A Fundamental Miscarriage of Justice

Since Congress has eliminated the court's statutory jurisdiction to review decisions regarding an alien's detention, Petitioner may only obtain access to the court by virtue of the narrow review permitted under the Suspension Clause [Article I, § 9] of the Constitution. See Yang, supra; Duldulao v. INS, 90 F.3d 396, 400 n. 4 (9th Cir. 1996). The judicial review required under the Suspension Clause in immigration cases is very narrow. Heikkila v. Barber, 345 U.S. 229, 235-36 (1953); Yang, 109 F.3d at 1195. Assuming for the sake of argument that this court were to find that it has habeas corpus jurisdiction under the Suspension Clause, its scope of review would be limited to constitutional errors on the part of the INS amounting to fundamental miscarriages of justice. See e.g., Herrera v. Collins, 506 U.S. 390, 404 (1993)(defining the term in the criminal context as nothing less than a "proper showing of actual innocence"); Sawyer v. Whitley, 505 U.S. 333, 336 et seq. (1992).

For more than a century, the Supreme Court has upheld detention "as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens ... Proceedings

6

to exclude or expel would be in vain if those accused could not be held in custody pending the inquiry into their true character..." <u>Wong Wing v. United States</u>, 163 U.S. 228, 235 (1896). In 1952, the Supreme Court commented on the important role detention plays in removal proceedings, stating, "[d]etention is necessarily a part of this deportation procedure. Otherwise, aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings." <u>Carlson v. Landon</u>, 324 U.S. 524, 528 (1952). The Constitution simply does not require review of immigration detention decisions. Moreover, due process is not offended where Congress has clearly precluded statutory review.

<u>Conclusion</u>

For the good cause shown above, the petition of Frank Enwonwu should be dismissed with prejudice.

7

UARY 14, 1999

# ill, a release plan surface

money before he graduated, so he returned to Nigeria.

He was caught at Logan Airport on Jan. 20, 1986, with 130 ounces of heroin in his rectum. He said that the Drug Enforcement Administration promised he would not be sent back to Nigeria if he helped them trap the ring's leaders, and that he was an informant for the DEA and the INS.

He said the INS got him a cab license, usually unavailable to someone with a felony conviction. He got a five-year suspended sentence for the heroin importation charge and completed his probation. In Boston, he worked as a cab driver and a health-care aide.

The DEA denies its agents told Enwonwu he could stay. "There were never any promises made to this individual," said Pamela Mersky, a DEA spokeswoman in New England.

INS officials said they could not discuss individual cases. Enwonwu has tried to obtain his own immigration file through the Freedom of Information Act, but has been unsuccessful.

Enwonwu's visit to the INS to inquire about his status – spurred by his desire to bring his wife and three sons from Nigeria – was what triggered his arrest. His 4-year-old US citizen son, who was living with him before he was arrested, is now staying with his wife and family in Nigeria.

Enwonwu said he was manipulated into acting as a drug courier, regrets his actions and has never had another run-in with the law. He has filed an appeal to avoid deportation under the United Nations Convention Against Torture, saying he fears he will be killed by the drug dealers he informed on if he returns to Nigeria.

The INS has tripled the number of detention beds since 1995. Some detainees are illegal immigrants waiting to be deported; others are awaiting decisions on their bids for asylum, a process that can leave them jailed for years.

The INS has more than tripled its detention and deportation budget in the past four years, from $239 million to $733 million, but that falls far short of what is needed.

The INS's Boston district – which includes



GLOBE PHOTO / TERESA MEARS

**Frank Enwonwu has been in the custody of the INS for 20 months.**

Massachusetts, New Hampshi Connecticut and Rhode Island has 443 people in custody, but on has funding to detain 252, said INS spokeswoman, Paula Gren About 95 percent of the people detained have been convicted crimes, and the majority are le residents, she said.

About half the inmates are INS facilities. The other half, cluding nearly all the detainees the custody of the Boston distr are scattered in county jail throughout the country.

One of the fastest-grow groups in INS custody are le immigrants who have been convic ed of crimes. The 1996 laws to away longtime residents' right hearings at which they could dem onstrate their rehabilitation and avert deportation. (While the la requires legal immigrants with old convictions th be detained, it does not require detentions of pe ple who enter illegally.)

The law also greatly expanded the number of crimes for which they must be deported. Until O tober, the INS could decide on an individual bas which people to release while their cases were pending, but all must now be detained, even pe ple with serious health problems.

Because some countries do not accept citizen back, immigrants from Cuba, Vietnam, Laos and several other nations are facing life in INS custo dy. Other countries accept some citizens, but re fuse to issue travel documents to others.

While the INS labels all those subject to de portation "aggravated felons," the definition is so broad that shoplifting, writing bad checks, drug possession and even some misdemeanors are no classified as "aggravated felonies."

"We have just abandoned our belief that indi viduals" can be rehabilitated, said Laurie Kozu of Mesquite, Texas, who formed a group cal Citizens and Immigrants for Equal Justice a her Canadian husband was ordered deported fo drug conviction. "This society is very unforgiv If Americans allow these kinds of laws to sta place, some day in the future, we're going to w up and find our rights gone."

IMMIGRATION COURT
JFK FEDERAL BLDG., ROOM 320
BOSTON, MA  02203-0002

In the Matter of

ENUONWU, FRANK
          Respondent

Case No.: A19-337-631

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Dec 16, 1999.
This memorandum is solely for the convenience of the parties.  If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case

[ ]   The respondent was ordered removed from the United States to
                                            or in the alternative to

[ ]   Respondent's application for voluntary departure was denied and
      respondent was ordered removed to
      alternative to

[ ]   Respondent's application for voluntary departure was granted until
            upon posting a bond in the amount of $ _____
      with an alternate order of removal to

[ ]   Respondent's application for asylum was ( )granted  ( )denied
      ( )withdrawn.

[✓]   Respondent's application for ~~denial~~ deferral of removal was (✓)granted
      ( )denied ( )withdrawn  pursuant to Art 3 of CAT

[ ]   Respondent's application for cancellation of removal under section
      240A(a) was ( )granted  ( )denied  ( )withdrawn

[ ]   Respondent's application for cancellation of removal was ( ) granted
      under section 240A(b)(1)     ( ) granted under section 240A(b)(2)
      ( ) denied  ( ) withdrawn.  If granted, it was ordered that the
      respondent be issued all appropriate documents necessary to give
      effect to this order.

[ ]   Respondent's application for a waiver under section _____ of the INA was
      ( )granted  ( )denied  ( )withdrawn or ( )other.

[ ]   Respondent's application for adjustment of status under section _____
      of the INA was ( )granted  ( )denied  ( )withdrawn.  If granted, it
      was ordered that respondent be issued all appropriate documents necessary
      to give effect to this order.

[ ]   Respondent's status was rescinded under section 246.

[ ]   Respondent is admitted to the United States as a _____ until _____

[ ]   As a condition of admission, respondent is to post a $ _____ bond.

[ ]   Respondent knowingly filed a frivolous asylum application after proper
      notice.

[ ]   Respondent was advised of the limitation on discretionary relief for
      failure to appear as ordered in the Immigration Judge's oral decision.

[ ]   Proceedings were terminated.

[ ]   Other: _____

      Date:  Dec 16, 1999
      Appeal: Waived/(Reserved)        Appeal Due By:
              by me.                    1/18/00

                                        EDWARD I. SHAPIRO
                                        Immigration Judge

KEK

**EXHIBIT – 15**



Commonwealth of MA
Div. of Professional Licensure

License No.
9056321

Serial No.
1-033659

Expiration Date
February 2, 2006

FRANK I. ENWONWU
65 ROCKWELL ST
MALDEN, MA 02148

Licensed Real Estate Salesperson



Frank Enwonwu's "Realtor of the Month" Award from
RE/MAX Realty - February, 2004.

EXHIBIT

17

U.S. Department of Justice                          Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

520868 0 6 23    Lb 1

File:  A19 337 631 - Boston                         Date:        MAY 3 0 2003

In re: FRANK ENWONWU

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  (Pro se)

ON BEHALF OF SERVICE:    John M. Furlong, Jr.
                         Assistant District Counsel

CHARGE:

    Notice:  Sec.  212(a)(2)(A)(i)(II), I&N Act [8 U.S.C. § 1182(a)(2)(A)(i)(II)] -
                    Controlled substance violation

                    212(a)(6)(A)(i), I&N Act [8 U.S.C. § 1182(a)(6)(A)(i)] -
                    Present without being admitted or paroled

                    212(a)(2)(C), I&N Act [8 U.S.C. § 1182(a)(2)(C)] -
                    Controlled substance trafficker

APPLICATION:  Protection under the Convention Against Torture

ORDER:

   PER CURIAM. The Immigration and Naturalization Service ("the Service," now the Department of Homeland Security, DHS) appeals from the Immigration Judge's December 16, 1999, decision granting the respondent deferral of removal under the Convention Against Torture ("CAT"). *See* 8 C.F.R. §§ 1208.17, 1208.18. On appeal, the Service argues that the respondent failed to meet his burden of proof and consequently cannot establish his *prima facie* eligibility for CAT. Refoulement of an alien to a country where it is "more likely than not" that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official is prohibited under CAT. *See* 8 C.F.R. §§ 1208.16(c)(4), 1208.18(a)(7). Torture is defined as "an extreme form of cruel and inhuman treatment" not including pain or suffering solely incident to lawful sanctions. *See id.* §§ 1208.18(a)(2)-(3). The Immigration Judge granted relief largely based on the fact that the respondent, under Nigerian law, will likely be subject to arrest, detention and prosecution on account of his drug conviction in the United States. We have previously held that a Nigerian convicted of a drug offense in the United States failed to establish eligibility for deferral of removal because the evidence she presented regarding the enforcement of Decree No. 33 of the Nigerian National Drug Law Enforcement Agency could not meet the burden of proof for CAT. *See Matter of M-B-A-*, 23 I&N Dec. 474 (BIA 2002). We therefore conclude that the mere possibility of arrest

2004  4:03PM                                          NO. 2747    P. 5

9 337 631

and prosecution in Nigeria does not establish that the respondent in this instance would more likely than not be subject to torture by a public official or with the acquiescence of such an official. *See* 8 C.F.R. §§ 1208.16(c)(4), 1208.18(a)(7).

Accordingly, the Service's appeal is sustained.

FURTHER ORDER: The Immigration Judge's decision is vacated and the respondent is ordered removed from the United States.

FOR THE BOARD

---

Matter of M-B-A is erroneous
1) The BIA and the attorney General have erred in adding a requirement of official "Consent or approval".
We therfore expressly disapprove of matter of Y-L, A-G R-S-R, 23 I. & N. Dec 270, 2002 WL 358818 (A.G. 2002) in So far as it takes a contrary position from Congressional Purpose See Khouzam V. Ashcroft 361 F.3d 161 2004 WL 349895 (C.A. 2, 2004) (2nd Cir April 2004).
2) The Human rights report on Nigeria 2004 certify that Decree 33 is in effect and in full force
Dept of State on Feb 23, 2007 cited with approval in Raukhide v. DHS 306 F. Supp. 2d 185 (D. Conn 2003) Convichion of an American Drug offense within the area of Decree 33. also contradicts the majority opinion in matter of M-B-A.
3) BIA reliance on respondent not meeting burden of demonstrating that it is more likely than not that she will be subjected to torture by or with acquiesence of a public official or other reasons acting in an oficial capacity if she is returned to her home country is wrong — Raukhide Us Taw.

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

Exhibit 4

File:   A19 337 631 - Boston

Date:

In re:  FRANK ENWONWU

FEB 1 5 2005

IN REMOVAL PROCEEDINGS

MOTION

ON BEHALF OF RESPONDENT:  Joyce & Zerola, P.C.

ORDER:

PER CURIAM.  The motion has been filed out of time and will be denied.  The final order in these proceedings was entered by the Board on May 30, 2003.  Pursuant to 8 C.F.R. § 1003.2(c)(2) (with certain exceptions not pertinent here), a motion to reopen in any case previously the subject of a final decision by the Board must be filed no later than 90 days after the date of that decision. In the instant case, a motion to reopen would have been due on or before August 28, 2003.  The record reflects, however, that respondent's motion to reopen was not received at the Board until October 13, 2004 .  The motion, therefore, was filed out of time.

Despite the respondent's claim  that neither he nor his former attorney of record was notified that the Department of Homeland Security (DHS) had filed an appeal, the record indicates that the Notice of Appeal (EOIR Form 26) was mailed to the respondent's former attorney at the last known address in the file.  While the respondent's former attorney moved, we do not know when.  DHS filed its appeal within the 30 day time limit allowed.  Former counsel for the respondent has filed an affidavit indicating he would check his file to confirm whether or not the notice of appeal was ever received by him.  As of yet we have not received this confirmation.

The respondent also states that after the October 16, 1999, order granting him deferral of removal, his address changed and he notified the postal service of the change.  He states he did not notify the Board or DHS of this change because he thought his case was closed.  Pursuant to 8 C.F.R. § 1265.1, "Except for those exempted by section 263(b) of the Act, all aliens in the United States required to register under section 262 of the Act shall report each change of address and new address within 10 days on Form AR-11.  This form is available at post offices and Services offices in the United States.  The completed form must be mailed to the Department of Justice, Immigration and Naturalization Service, Washington, D.C. 20536."  We note the respondent in the instant case does not fall under the section 263(b) exemption category.

Accordingly, the motion to reopen is denied.

FOR THE BOARD

EXHIBIT – 20

# JOYCE & ZEROLA, P.C.

## ATTORNEYS AT LAW

205 PORTLAND STREET
FIFTH FLOOR
BOSTON, MA 02114
TEL: 617.523.1500
FAX: 617.523.2400

WILLIAM P. JOYCE * **
PAUL F. ZEROLA

JANE C. CHIANG ◊ ◊◊
NICOLE M. INGLESE

◊  Also Admitted in New Jersey
◊◊  Also Admitted in New York
*  Also Admitted in Virginia
**  Also Admitted in Washington D.C.

December 1, 2004

Officer Dennis Allen

**RE: Frank Enwonwu's Medical Problems.**

Dear Mr. Allen:

Mr. Enwonwu has many serious medical concerns for which he requires urgent attention. The first problem is that he suffers from **Gout**, which causes him intense pain. It is a serious ailment that is especially severe in his knees and ankles. The ache is especially intense in his injured leg.

Mr. Enwonwu also must endure an agonizing case of **Hemorrhoids**. It causes him great discomfort and he often has blood in his stools. Kindly provide him with fiber to lessen the pain caused by the Hemorrhoids.

Mr. Enwonwu has **Acute Hypertension**. He also suffers from high blood pressure. The last time his blood pressure was checked, it was at a level of 175/98. At the current time it is checked once a week at most. Because of the dangerous level of his pressure, please check his pressure daily until it is brought back to a reasonable level.

Mr. Enwonwu has a low blood count, which in conjunction with his other medical conditions is cause for serious concern. He also suffers from bleeding gums that cause him great discomfort and interfere with his ability to eat.

Mr. Enwonwu has severe **arthritis** that is painful and debilitating. As of late, the arthritis has become more severe due to the cold weather.

Exhibit 34

Mr. Enwonwu also suffers from acute pains caused by **withdrawal from his medications**. Before he was incarcerated, Mr. Enwonwu was taking four medications. He was prescribed a daily dose of 550 Mg. of Naproxen Sodium, 50 Mg. of Atenolol, 330 Mg. of IC Allopurinol, and one other unknown medication. Please provide him with these medications to help with his numerous ailments.

The nature and number of medical problems from which Mr. Enwonwu suffers puts his life at risk. We would appreciate any assistance that you could provide. Please contact me if you have any questions. Thank you in advance.

Sincerely,

Jane C. Chiang