UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

FRANK ENWONWU,                )
    Petitioner,              )
                             )    Civil Action 05-11666-WGY
v.                           )
                             )
MICAHEL CHERTOFF,            )
BRUCE CHADBOURNE,            )
HOMELAND SECURITY, and       )
THOMAS HODGESON,            )
    Respondents.             )

**RESPONDENTS, MICHAEL CHERTOFF, BRUCE CHADBOURNE
AND THE DEPARTMENT OF HOMELAND SECURITY'S,
<u>OPPOSITION TO THE PETITION FOR RELEASE</u>**

**<u>Introduction</u>**

On August 8, 2005, Frank Enwonwu ("Enwonwu") filed the instant

petition for writ of habeas corpus seeking release from "unlawful detention,

without any provision for release on Bond or any form of conditional

release, pending the resolution of his case currently pending in the United

States Court of Appeals (First Circuit)." Petition, p. 1.

This is Enwonwu's second petition in this court. Less than one month

before the filing of this Petition, on July 12, 2005, this Court transferred

claims challenging the validity of the underlying removal order to the First

Circuit pursuant to Section 106(c) of the REAL ID Act of 2005, H.R. 1268,

1

Pub. L. No. 109-13, Div. B, 119 Stat. 231 ("RIDA"), and denied that

Petition to the extent that it sought relief from continued detention.  Had

Enwonwu wished to challenge that finding, he should have timely appealed

this Court's denial of release from custody to the First Circuit Court of

Appeals.

In the instant petition, Enwonwu seeks to re-litigate this Court's

earlier decision to deny relief from continued custody.  He alleges that

continued detention is unlawful because his removal order violates

procedural and substantive due process, Petition, p. 12, that he is exposed to

danger in the Bristol County House of Correction because of his self

publication of his cooperation with federal agents, id., p. 13-14, 17-20, that

the relevant factors favor his release, id., 15-16, and that his detention

exceeds the period permitted under the Supreme Court decision in Zadvydas

v. Davis, 533 U.S. 678, 683 (2001).  Id., p. 16, 22.

As articulated below, Enwonwu's assertion of perceived deficiencies

in his removal proceedings is of no assistance to this Court as its jurisdiction

is limited to the question of whether Enwonu's continued detention is

unlawful.  See Section I, infra.  Enwonwu could have appealed this Court's

denial of release from custody to First Circuit and has procedurally defaulted

2

such claims.  See Section II, infra.  In addition, his detention is mandatory

pending the outcome of judicial review in the First Circuit, otherwise

authorized by law and consistent with the Supreme Court's decision in

Zadvydas v. Davis.  See Section III-IV, infra.  Finally, there is no state

created danger.   Enwonwu sought the publicity of which he complains and

cannot now complain simply because his efforts to obtain publicity were

actually successful.  See Section V, infra.

As a consequence, the Petition must be dismissed.

## Facts

Relevant to the instant action,[1] on September 13, 2004, Enwonwu was

arrested and detained on the basis of an outstanding order of removal.  On

March 17, 2005, Enwonwu filed his first petition for a writ of habeas corpus

seeking review of the removal order and an emergency stay of removal.  See

---

[1] Enwonwu spends a substantial portion of the instant petition, Petition, p. 2-
12, outlining facts which Enwonwu contends support his argument that the
underlying removal order is invalid.  It is the undisputed law of this case that
the RIDA has shifted exclusive jurisdiction to entertain such claims to the
First Circuit Court of Appeals.  See Enwonwu v. Chertoff, 376 F.Supp. 2d
42, 78-84(D. Mass. 2005) (concluding that the RIDA operated to deprive the
district court of jurisdiction to entertain challenges to the validity of
Enwonwu's removal order and transferring such claims to the First Circuit).
As a consequence, such claims are not appropriately before this Court, and,
to the extent the Petition is construed as challenging custody based upon the
alleged invalidity of the underlying removal order, such claims must be
dismissed for lack of subject matter jurisdiction.  Id.

Docket # 05-10511-WGY, #1 and 7.  On March 28, 2005, the Respondent

provided notice of his intent to effect the removal of Enwonwu on April 12,

2005, which was amended to reflect a removal date of April 13, 2005.  See

Docket # 05-10511-WGY, #6 and 8.  On April 11, 2005, this Court orally

stayed[2] the removal of Enwonwu pending the outcome of an evidentiary

hearing.  After several evidentiary hearings had been conducted but prior to

this Court's decision, Congress enacted the RIDA.  On May 18, 2005,

Respondent moved, pursuant to the RIDA Section 106(c), to transfer the

claim to the First Circuit Court of Appeals.  See Docket # 05-10511-WGY,

#15.

On July 12, 2005, this Court ordered that the matter be transferred

pursuant to Section 106(c) of the RIDA to the First Circuit Court of Appeals.

Enwonwu, 376 F.Supp. 2d at 84.  The Court also denied Enwonwu's

Petition to the extent that it challenged his continued detention.  Id.

### Argument

### I. Jurisdiction

Claims of unlawful detention or conditions of detention, independent

of the order of removal, remain within this Court's habeas jurisdiction.  As

---

[2] The stay is not reflected on the docket.  There is no dispute among the
parties, however, that such a stay was granted.  See, e.g., Petition, p. 12.

this Court is well aware, before May 11, 2005 - the effective date of RIDA - most aliens had two options for seeking judicial review of removal orders. Aliens, other than those convicted of certain specified crimes, could file a petition for review in the court of appeals within 30 days of the BIA's decision.  8 U.S.C. §1252(a)(2)(C), (b) (2004).  Additionally, criminal aliens and non-criminal aliens (who had exhausted the above noted review) could seek review in the district court by way of a writ of habeas corpus.  The latter remedy was limited to pure questions of law.  See INS v. St. Cyr, 533 U.S. 289 (2001).

In enacting RIDA, Congress was specifically addressing the "anomalies" created by the Supreme Court in INS v. St. Cyr.  See H.R. Rep. 109-72, at 174 (2005).  These modifications effectively limit all aliens to one bite of the apple with regard to challenging the validity of an order of removal, in an effort to streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review).  See H.R. Conf. Rep. No. 109-72, at 173-75 (2005).

For purposes of this action, there are three relevant amendments. Section 106(a)(1)(B) of the REAL ID Act provides that exclusive

5

jurisdiction to review the validity of orders of removal lies in the courts of appeal.  <u>See</u> 8 U.S.C. § 1252(a)(5), as amended by RIDA § 106(a)(1)(B), Pub. L. No. 109-13, 119 Stat. at 310-11.  Section 106(a)(2) of RIDA expressly eliminates all other bases of jurisdiction to challenge the validity of removal orders.  <u>See</u> 8 U.S.C. § 1252(b)(9), as amended by RIDA § 106(a)(2), Pub. L. No. 109-13, 119 Stat. at 311.  Finally, Section 106(a)(3) amends 8 U.S.C. § 1252(g) to eliminate district court jurisdiction to interfere with the initiation, adjudication or execution of an order of removal.  <u>See</u> 8 U.S.C. § 1252(g) as amended by RIDA § 106(a)(3).  Congress also provided that the portion of any habeas claim (pending May 11, 2005) challenging an order of removal be transferred to the appropriate court of appeals and addressed as a petition for direct review. [3]

Congress did not direct that all pending habeas claims be transferred. Congress intended that claims "independent" of challenges to the validity of removal orders remain within district court jurisdiction.  <u>See</u>, H.R. Conf.

---

[3] Congress further provided that the relevant changes enacted by RIDA § 106(a) "shall take effect upon the date of the enactment of this [Act] and shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of enactment of this division."  RIDA § 106(b), Pub. L. No. 109-13, 119 Stat. at 311; <u>see also</u>, <u>Kolster v. INS</u>, 101 F.3d 785, 788 (1st Cir. 1996) (jurisdictional provisions are generally effective immediately and present no retroactivity problems).

Rep. No. 109-72, at 175 (2005) ("section 106 would not preclude habeas

review over challenges to detention that are independent of challenges to

removal orders. Instead, the bill would eliminate habeas review only over

challenges to removal orders.").

> [T]he REAL ID Act does not create new jurisdictional rules for
> all classes of habeas petitions.  Rather, it affects only those
> petitions challenging orders of removal, deportation, and
> exclusion.  No other conclusion is logical; Congress would not
> have provided for the apportioned transfer of cases unless it
> contemplated that the jurisdictional regime governing the
> remaining habeas matters would remain undisturbed.

Ahmad v. Chertoff, 2005 WL 1799752 (W.D.Wash. 2005).  Accordingly,

challenges to Enwonwu's detention under Zadvydas and challenges to the

conditions of confinement, for example, remain within this Court's subject

matter jurisdiction.   See, e.g., Sissay v. Gonzales, 2005 WL 1541085 (E.D.

Ca. 2005) ("Petitioner does not seek judicial review of the underlying

removal order. Rather, he challenges the legality of his continued

confinement pending removal under Zadvydas v. Davis.  Nothing in the Real

ID Act precludes a district court from deciding such a challenge.").

Needless to say, challenges to continued detention predicated upon the

validity of the underlying order of removal are barred.  See, H.R. Conf. Rep.

No. 109-72, at 175; Enwonwu, 376 F.Supp. 2d at 84.

**II.    Enwonwu Has Procedurally Defaulted His Claims Challenging Continued Custody To The Extent Such Claims Arise From Conduct Or Events Prior To This Court's July 12, 2005, Order**

Because this Court retained jurisdiction to entertain challenges to the continued detention of Enwonwu, and Enwonwu elected not to appeal this Court's denial of his earlier petition for release, claims of unlawful detention arising from conduct or events prior to July 12, 2005, have been procedurally defaulted.  See Rivera-Martinez v. Ashcroft, 389 F.3d 207, 210 (1st Cir. 2004).[4]  Enwonwu could have, but did not, timely appeal this Court's order denying release to the First Circuit Court of Appeals.

**III.    The Relevant Statutory Scheme Provides For Mandatory Detention Of Enwonwu Pending A Final Decision Of The First Circuit Court Of Appeals**

   A.    Background – The Statutory Bases For Detention of Aliens

Title 8, Section 1226 of the United States Code, provides for the arrest, detention and release of aliens against whom removal proceedings have been initiated, but not yet completed.  For criminal aliens, 8 U.S.C. § 1226(c)(1), provides for mandatory detention pending the completion of removal proceedings (except in certain circumstances not present here). See

---

[4] To the extent such claims may exist, transfer of such claims to the First Circuit is authorized by 28 U.S.C. §1361, as this petition was filed on August 3, 2005, within 30 days of this Court's Order.

8 U.S.C. § 1226(c).  Enwonwu, convicted of a narcotics offense, falls within

the mandatory detention provision.  See 8 U.S.C. § 1226(c)(1)(B).

Once a criminal alien's removal proceedings have been completed, an alien's

detention during the "removal period" is governed by 8 U.S.C. § 1231.

Under that section, the Attorney General is required to detain and effect

removal of criminal aliens upon the entry of a final order of removal within

90 days.  8 U.S.C. § 1231(a)(2).[5]  After the 90-day "removal period" ends, if

the alien has not been removed, the alien may be released subject to

conditions.  8 U.S.C. § 1231(a)(3).  Subsection 1231(a)(6), however,

authorizes the Attorney General to continue to detain certain criminal aliens,

including Enwonwu, or upon a finding that the alien is "a risk to the

community or unlikely to comply with the order of removal."  8 U.S.C. §

1231(a)(6).  Where an alien is detained pursuant to this section regulations at

8 C.F.R. § 241.4 provide for periodic review.

    B.    <u>Enwonwu Is Properly Detained Pursuant to 8 U.S.C. §1226</u>

In the procedural posture of this claim, Enwonwu's detention is

mandated by 8 U.S.C. §1226(c) (governing aliens whose removal

---

[5] This "removal period," however, does not commence where an alien has
sought judicial review and a stay has been entered.  See 8 U.S.C. §
1231(a)(1)(B)(ii).

proceedings are not yet complete) which provides that aliens convicted of a narcotics offense <u>shall</u> be detained pending a final order of removal.  While this result may initially appear counterintuitive (an administratively final order having entered in May of 2003), it is nonetheless mandated by the plain language of the applicable statutory scheme.  When Enwonwu's prior habeas petition was transferred to the First Circuit for judicial review under Section 106(c) of the RIDA (and a stay was entered),[6] that order effectively rendered Enwonwu's order of removal non-final, insomuch as the detention statutes are concerned.  <u>See</u> 8 U.S.C. § 1231(a)(1)(B)(ii) (providing that the "removal period" shall not commence in such circumstances).

As noted above, the detention scheme established by Congress distinguishes between aliens awaiting a final order of removal and aliens whose "removal period" has commenced.  <u>See</u> 8 U.S.C. §§ 1226 and 1231.  Under Section 1231(a)(2)(B), an alien's "removal period," subjecting the alien to detention under Section 1231, commences only after a final order has been issued by any court in which judicial review is sought (providing that court stays removal).  Specifically, it provides:

---

[6] RIDA Section 106(c), mandating the transfer of habeas action pending on May 11, 2005, provided that that a transferred action shall be treated "as if it had been filed pursuant to a petition for review [8 U.S.C. §1252]."  RIDA, Section 106(c).

(B) Beginning of period

The removal period begins *on the latest of* the following:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. §1231(a)(2)(B) (emphasis added).  Thus, despite the fact that there is an "administratively" final order, the pending petition for judicial review coupled with the First Circuit's stay of removal renders that "administrative order" non-final for purposes of the legislatively created custody scheme.

By this provision, Congress indisputably intended that an "administratively final" order would not begin the "removal period" where judicial review was sought and a stay allowed.  As found by the Second Circuit:

> The determination of when an alien becomes subject to detention under INA § 241 [8 U.S.C. § 1231] rather than INA § 236 [8 U.S.C. §1226] is governed by INA § 241(a)(1). Pursuant to § 241(a)(1)(B)(ii), "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien [pending review]," then the removal period begins on "the date of the court's final order."  Accordingly, where a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under § 236 until the

court renders its decision.

Wang v. Ashcroft, 320 F.3d 130, 147 (2nd Cir. 2003).

Upon this Court's transfer of Enwonwu's claims to the First Circuit for judicial review, and the entry of a stay of removal, Enwonwu became subject to the mandatory detention provision of 8 U.S.C. §1226(c). Congress has expressly legislated that Enwonwu, an alien convicted of a narcotics offense covered by 8 U.S.C. §1227(a)(2)(B), awaiting a final order of removal, shall be detained pending a final order from the court of appeals. See 8 U.S.C. § 1226(c)(1)(B); and 8 U.S.C. §1231(a)(1)(B)(ii). The plain language of the applicable statutes mandates this conclusion.

To the extent that Enwonwu argues he is not dangerous or a flight risk and that detention absent such findings is unconstitutional, that argument lacks merit insomuch as detention is authorized by 8 U.S.C. § 1226. It is irrelevant under 8 U.S.C. § 1226(c) whether Enwonwu is a flight risk or danger to the community. See DeMore v. Kim, 538 U.S. 510 (2003) (upholding mandatory detention pending a final order of removal in the absence of individualized determinations of dangerousness or risk of flight). Similarly, to the extent Enwonwu argues his detention has been in excess of six months, the temporal limitations on detention espoused in Zadvydas are

12

inapposite.  First, <u>Zadvydas</u> dealt with detention <u>after</u> a final order of removal.  Second, Enwonwu's detention is finite (it terminates upon the First Circuit's decision) and Enwonwu's removal (absent a stay) would be effected in the reasonably foreseeable future.[7]    <u>See</u> <u>Demore</u>, 538 U.S. at 528-530 (expressly distinguishing <u>Zadvydas</u> as pre-order detention is finite as it ends upon decision of the court and noting that in <u>Zadvydas</u> removal was not practicably attainable).

Thus, Enwonwu's continued custody is not only mandated by Congress, but is wholly consistent with due process as found by the Supreme Court in <u>Demore</u>.

---

[7] But for the stay of this Court, and the present stay of the First Circuit, Enwonwu would already have been removed.  <u>See</u> Docket # 05-10511-WGY, #6 and 8.

**IV.    Alternatively, Enwonwu's Detention Is Lawful Because He Cannot Demonstrate That His Removal Could Not Be Effected In The Reasonably Foreseeable Future Should the First Circuit Stay Be Dissolved And Because Congress Has Expressly Provided For The Continued Detention Of Aliens Who Interfere With The Execution Of Their Order of Removal**

**A.    Assuming This Court Were to Find that Enwonwu Is Held Pursuant to 8 U.S.C. § 1231, Continued Detention Is Lawful As Enwonwu Cannot Demonstrate That His Removal Cannot Be Effected In the Reasonably Foreseeable Future**

Even if this Court were to determine that Enwonwu's custody should be analyzed under 8 U.S.C. §1231 (authorizing detention of aliens whose removal proceedings are complete), Enwonwu's claim fails as he cannot meet his prima facie burden under <u>Zadvydas</u>.[8]  In this case, the Petitioner's

_____

[8] The detention of post removal order aliens is governed by 8 U.S.C. §1231, which provides in relevant part:

(1)(A) In general, except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period") . . . .

(2) During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title. . . .

(6) Inadmissible or criminal aliens
An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2) [including criminal aliens convicted of narcotics offenses], or

continued detention is authorized under 8 U.S.C. §1231(a)(6) which allows

continued detention of criminal aliens in the discretion of immigration

officials.[9]

Indeed, the Supreme Court has expressly recognized that the statutory

scheme at issue authorizes detention in excess of ninety days.

> The post-removal-period detention statute is one of a related set
> of statutes and regulations that govern detention during and
> after removal proceedings.  While removal proceedings are in
> progress, most aliens may be released on bond or paroled.
> After entry of a final removal order and during the 90-day
> removal period, however, aliens must be held in custody. §
> 1231(a)(2).  Subsequently, as the post-removal-period statute
> provides, the Government "may" continue to detain an alien
> who still remains here or release that alien under supervision. §
> 1231(a)(6).

Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (emphasis added).  Unwilling

to allow indefinite detention, however, the Supreme Court established

limitations on post removal detention, recognizing six months as a

---

1227(a)(4) of this title or who has been determined by the Attorney
General to be a risk to the community or unlikely to comply with the
order of removal, may be detained beyond the removal period and, if
released, shall be subject to the terms of supervision in paragraph (3).
8 U.S.C. § 1231.

[9] To the extent that Enwonwu argues he is not dangerous or a flight risk, such
argument is irrelevant.  Under 8 U.S.C. §1231 (a)(6), discretionary
continued detention is authorized for criminal aliens such as Enwonwu "or"
upon a finding of dangerousness or risk of flight.  8 U.S.C. § 1231(a)(6).

presumptively reasonable period of detention within which to allow the

government to accomplish an alien's removal. <u>Id</u>. at 701.

Should detention exceed six months, an alien is not entitled to release

unless the alien can establish that his or her removal could not be effected in

the reasonably foreseeable future:

> After this 6-month period, <u>once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,</u> the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  <u>To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future</u>.

<u>Zadvydas</u>, 533 U.S. at 701 (emphasis added).[10]

Enwonwu sought, and obtained, a stay of removal on April 11, 2005.

Due to this Court's (and now the First Circuit's) stay, Enwonwu was not

removed.  It is undisputed that absent such a stay, Enwonwu's removal

---

[10] <u>See</u> <u>also</u>, <u>e.g</u>., <u>Habtegaber v. Jenifer</u>, 256 F. Supp.2d 692, 696 (E.D. Mich. 2003) ("an alien may be detained beyond the 90 day period if he/she is inadmissible (under 8 USC § 1182), removable (under certain provisions of 8 USC § 1227) or has been determined to be a risk to the community or unlikely to comply with the order of removal."); <u>Apau v. Ashcroft</u>, 2003 WL 21801154, *2 (N.D. Tex. 2003) (same).

would be effected.  Thus, there is a "significant likelihood of removal in the reasonably foreseeable future," and petitioner's continued detention is wholly lawful under Zadvydas. [11]

> B.    By Obtaining A Stay of Removal, Enwonwu Has Acted to Prevent His Removal

Finally, because Enwonwu's continuing detention pending execution of his final removal order is the result of Enwonwu's own efforts to forestall his removal from the United States by seeking and obtaining a stay, Enwonwu's detention pending execution of his removal order is also authorized by section 241(a)(1)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(1)(C). ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . acts to prevent the alien's removal subject to an order of removal") (emphasis added).  See also, Akinwale v. Ashcroft, 287 F.3d 1050, 1052 n. 4 (11th Cir. 2002); Perreira v. Faraquharson, 2002 WL 31094957, *6 (D. Conn. 2002);  contra, Arevalo v. Ashcroft, 260

---

[11] Section 241.4 of 8 C.F.R. sets out a procedure under which aliens detained pending removal may obtain custody reviews, ordinarily every ninety days. See 8 C.F.R. §241.4; Zadvydas, 533 U.S. at 683.  Enwonwu's last custody review was conducted on May 13, 2005.

F.Supp. 2d 347 (D. Mass. 2003), vac'd on appeal, 386 F.3d 19 (1st Cir. 2004).

### V.    Finally, There Is No State Created Danger

Enwonwu argues that the recent publicity concerning his case has resulted in a general awareness of his fellow inmates that he is a "snitch." Because of their awareness, Enwonwu contends that continuing to detain him in the Bristol County Jail constitutes a "state created" danger.

These claims do not state a substantive due process violation because Enwonwu, not the government, is responsible for such publicity.[12] Enwonwu willingly spoke to reporters and voluntarily provided the information that he had cooperated with DEA.  Enwonwu, with counsel, filed an unsealed complaint disclosing his cooperation.  Enwonwu, not the government, called the agents as witnesses and elicited testimony concerning Enwonwu's cooperation.  Moreover, prior to eliciting the agents'

---

[12] To the extent this Court found that Enwonwu's cooperation would have been apparent to members of the Nigerian drug conspiracy based upon the circumstances of the 1986 controlled delivery, see Enwonwu, 376 F.Supp. 2d at 71, no such inference may be drawn in this matter as to inmates at the Bristol House of Correction.  It is not within the realm of reason that inmates at the Bristol House of Correction would be aware (twenty years later) of Enwonwu's 1986 cooperation absent Enwonwu's continuous advertisement of this fact.

testimony, at the behest of the government, Enwonwu expressly waived any and all privilege and/or objection to the agents' testimony in open court.

There is simply no basis whatsoever upon which to contend that the government is any way responsible for any publicity or the disclosure of Enwonwu's 1986 cooperation. See Enwonwu, 376 F.Supp.2d at 71. ("the public awareness of [Enwonwu's] status as a confidential DEA informant was caused by Enwonwu himself when he volunteered his story to the media and failed to file his court actions under seal. Indeed, because the recent media coverage of Enwonwu's plight was not a result of executive conduct, such publicity cannot be the basis for any state-created danger.").

Having sought out media attention, Enwonwu cannot now make a complaint because his efforts were successful. This case could not possibly be more distinguishable from McIntyre v. United States, 336 F. Supp. 2d 87 (D. Mass. 2004), upon which Enwonwu relies. It is beyond rational dispute that no claim would have existed in McIntyre had the purported victims themselves gone to a newspaper and published the fact of their cooperation.

In the absence of government conduct creating the risk, there is no substantive due process violation. Rivera v. Rhode Island, 402 F.3d 27 (1st Cir. 2005).

## Conclusion

For the foregoing reasons, the Respondents request that the Petition for Release be dismissed.

Respectfully Submitted,

MICHAEL J. SULLIVAN
United States Attorney

 /s/ Mark J. Grady
MARK J. GRADY
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA   02210
Tel. No. (617) 748-3136

CERTIFICATE OF SERVICE

I certify that on August, 2005, I caused a copy of the foregoing Opposition to the Petition for Release to be served by first class mail, postage pre-paid on Frank Igwebuike Enwonwu, Inmate # 1353361, Unit G-C, Bristol House of Correction, 400 Faunce Corner Road, North Dartmouth, MA 02742.

/s/ Mark J. Grady
Mark J. Grady
Assistant U.S. Attorney